NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1132-12T4


NATALIE BELLINO,

    Petitioner-Respondent,

v.

VERIZON WIRELESS,

    Respondent-Appellant.

_____

APPROVED FOR PUBLICATION

March 19, 2014

APPELLATE DIVISION

Argued September 10, 2013 — Decided March 19, 2014

Before Judges Messano, Sabatino, and Hayden.

On appeal from the Department of Labor and Workforce Development, Division of Workers' Compensation, Claim Petition No. 2010-5720.

Ian G. Zolty argued the cause for appellant (Capehart & Scatchard, P.A., attorneys; Mr. Zolty, on the brief).

D. Gayle Loftis argued the cause for respondent.

Pablo N. Blanco argued the cause for amicus curiae New Jersey Advisory Council on Safety and Health (The Blanco Law Firm, LLC, attorneys; Mr. Blanco, on the brief).

The opinion of the Court was delivered by

HAYDEN, J.A.D.

This case concerns an injured worker's eligibility for temporary disability benefits and medical treatment under the

Workers' Compensation Act, N.J.S.A. 34:15-1 to -142 (the Act) and the essential elements required for the Act's anti-fraud provision, N.J.S.A. 34:15-57.4, to negate a claimant's eligibility for benefits. In particular, we consider the state of mind that a respondent must prove to disqualify a claimant who makes misstatements about his or her medical history when applying for benefits.

Respondent Verizon Wireless appeals from the October 15, 2012 order of the workers' compensation court, which granted temporary disability and medical benefits to petitioner Natalie Bellino. Respondent argues that the workers' compensation court erred in finding the testimony of petitioner and her physicians credible; in finding petitioner was entitled to curative medical treatment and temporary disability benefits due to a work-related injury; and in permitting her to receive workers' compensation benefits despite petitioner's statements and omissions that respondent alleges amount to fraud in violation of N.J.S.A. 34:15-57.4. Having considered respondent's arguments in light of the record and the applicable legal principles, we affirm.

The record reflects that in February 2010, petitioner worked for respondent as a customer service and sales representative at respondent's store in Secaucus. On February

23, 2010, petitioner tripped over some boxes, fell forward over the cartons onto the ground, and experienced immediate pain in her right hand and arm, right knee, left ankle, and lower back. After her co-workers helped her up, petitioner called her father, who took her to an urgent care doctor's office. Respondent instructed her a few days later to go to its authorized medical provider, Concentra Medical Centers.

On March 2, 2010, petitioner began receiving medical care from several doctors at Concentra, including Dr. Armondo Martinez, an orthopedic surgeon. In April 2010, Dr. Martinez, after observing swelling of petitioner's right hand and fingers, referred petitioner to another Concerta physician, Dr. Jonathan Lester, a specialist in physical rehabilitative medicine and pain management.

During the course of his authorized treatment of petitioner from April 28, 2010 to July 20, 2011, Dr. Lester diagnosed her back complaints as a lumbar strain and her right hand and arm complaints as Complex Regional Pain Syndrome (CRPS), also known as Reflex Sympathetic Dystrophy.[1] He found that she had significant edema of the right hand, increased temperature in the right hand compared to the left, significant tenderness or

---

[1] The week before his testimony, Dr. Lester changed his diagnosis to chronic pain disorder of the right upper extremity and testified that he was unable to state that it was work related.

pain from light palpitation or squeezing, and "exquisite" pain from light touch of the right hand. Dr. Lester recommended several treatments, which respondent's insurer would not approve, including a series of nerve blocks, which he opined were often effective for treating CRPS.

Respondent referred petitioner to Dr. Gallick[2] in July 2010 for an evaluation. Dr. Gallick determined, after examining petitioner, that she could return to work and no longer needed any treatment. Respondent ceased providing medical treatment and temporary benefits, and petitioner filed a motion for their resumption.

On October 15, 2010, the judge of compensation ordered respondent to resume providing petitioner with medical treatment until the receipt of the reports of respondent's medical evaluators. Respondent scheduled evaluations with Dr. Eric L. Fremed, a neurologist, on November 1, 2010, and with Dr. David J. Gallina, a psychiatrist, on November 30, 2010. Respondent also referred petitioner for treatment to Dr. Nilaya Bhawsar, a neurologist, who diagnosed her with CRPS, prescribed medication, and recommended that she be treated "aggressively" with nerve blocks. Respondent did not follow Dr. Bhawsar's recommendation because its two medical evaluators recommended that petitioner

---

[2] Dr. Gallick's first name does not appear in the record.

needed no treatment, and respondent again stopped providing treatment for petitioner.

Petitioner filed another motion for temporary disability benefits and medical treatment on January 10, 2011. The judge of compensation conducted hearings on the motion on nine non-consecutive days between March 2011 and May 2012. Petitioner testified at the hearings. Dr. Gregory D. Anselmi, her treating neurologist, and Dr. Angela Adams, her neurological expert, also testified on petitioner's behalf. The report of Dr. Bhawsar, petitioner's authorized treating neurologist, was admitted in lieu of his testimony. For respondent, Mariano Ortega, petitioner's supervisor,[3] Dr. Lester, Dr. Fremed, and Dr. Gallina testified.

Dr. Anselmi testified that he first treated petitioner in 2009 for low back, neck pain, headaches, and vision problems. He next saw petitioner on September 22, 2010, after respondent had stopped providing medical treatment. Dr. Anselmi, who reported that he has treated over one hundred CRPS patients, explained that CRPS was caused by a traumatic injury, sometimes a quite mild one. This trauma sent an impulse to the brain which, for unknown reasons, the brain failed to modulate as it

---

[3] Ortega testified that petitioner had been complaining about her back hurting in the weeks before she fell.

normally would, resulting in continued pain and swelling of the affected body parts. During the course of the doctor's treatment, he observed that petitioner's pain grew worse, and she began to develop a contracture of the right hand, which he noted could not be voluntarily developed. Dr. Anselmi opined that petitioner needed medical treatment, was unable to work, and had a poor prognosis.

Dr. Adams, who examined petitioner on August 4, 2010, and again on November 9, 2011, testified that at the first examination she found guarding of petitioner's right hand and arm, measurable temperature difference between the right and left hands, swelling of the right hand, and paler skin tone of the right hand than the left. She later found that petitioner's symptoms were worse on the second visit, noting a higher temperature of the right hand, increased guarding of the right shoulder and arm, and changes in the fingernails not present at the first visit.

Dr. Adams' diagnosis was CRPS of the right arm, lumbosacral radiculopathy, and adjustment disorder with mixed anxiety and depressed mood, all causally related to the accident. She noted that petitioner's current symptoms were different from the pain from her hand and arm problems prior to the work-related accident. In the doctor's opinion, petitioner's prior mental

A-1132-12T4

health conditions and back issues were exacerbated by the accident. Dr. Adams recommended a course of treatment including evaluation and treatment by an expert in CRPS, a neurological evaluation and treatment including pain management and physical therapy, and a psychiatric evaluation and treatment.

Dr. Fremed testified for respondent that petitioner's examination on November 1, 2010, was completely normal, petitioner had a full range of motion with no spasms or restrictions, and she had no asymmetry of the temperature or skin tone of the hands. He found a mild swelling of the right wrist but opined that it could have occurred by petitioner consistently holding it in a "dependent position" below the level of her heart. Dr. Fremed opined that petitioner did not meet the clinical standard for CRPS because a psychiatric cause of her symptoms had not been ruled out. In any event, in his opinion, her symptoms were not related to the accident, and she did not need any neurological treatment.

Dr. Gallina, who is board certified in both psychiatry and neurology, testified that he examined petitioner on November 30, 2010, and found no evidence of a neuropsychiatric illness. He did not believe petitioner needed psychiatric treatment due to the work accident.

At the close of the hearings, the judge of compensation issued a comprehensive opinion, thoroughly reviewing the testimony and making detailed findings of fact and conclusions of law. First, he found that petitioner's testimony was "credible, honest, straightforward and not exaggerated." He noted that he observed during her testimony that her right hand appeared "a lot more swollen" than the left.

The judge of compensation also determined that Dr. Anselmi's testimony was credible and "most persuasive." He gave substantial weight to Dr. Anselmi's opinion because he was petitioner's treating doctor both before and after the accident. He also found Dr. Adams credible and persuasive. In contrast, the judge found the opinions of Dr. Fremed and Dr. Lester neither credible nor persuasive. The judge highlighted that Dr. Fremed testified that petitioner did not meet the clinical standards for CRPS because a psychiatric etiology for her symptoms had not been ruled out, but Dr. Gallina testified that petitioner did not suffer from a psychiatric illness or need psychiatric treatment. The judge concluded that petitioner had sustained her burden of proving that she was in need of medical treatment and unable to work and ordered respondent to provide the treatment recommended by Dr. Adams.

The judge of compensation also considered respondent's argument that petitioner's claim should be dismissed under the anti-fraud provision of the Act, N.J.S.A. 34:15-57.4, because she had allegedly provided fraudulent information to her examining and treating physicians.

Respondent maintained that several of petitioner's statements to both her treating and examining physicians were false, incomplete, or misleading, including that petitioner did not disclose every medication she was taking to each doctor she saw; did not report all prior treatment of her back and hand to each doctor; failed to reveal that she had a substance abuse problem in years prior and took Suboxone to prevent relapse; and failed to fully disclose her prior psychiatric treatment and issues.

Petitioner denied that the record contained evidence that she purposely or knowingly provided false or misleading information. In her testimony, petitioner stated that she tried to answer all the doctors' questions truthfully, but pointed out that she had seen many doctors several times and was not always certain of times and dates of previous treatment. She also disagreed with the characterization of her statements contained in several doctors' reports.

The judge rejected respondent's argument based upon the credible testimony of petitioner and her medical witnesses and the fact that "the medical records introduced into evidence reflected petitioner's pre-existing conditions and prior use of medications and were reviewed by treating and examining physicians of both parties[.]" He concluded that respondent had not proven by a preponderance of evidence that petitioner "purposely or knowingly made false or misleading statements for purposes of obtaining benefits." This appeal ensued.

When reviewing a judge of compensation's decision, we consider "'whether the findings made could reasonably have been reached on sufficient credible evidence presented in the record,' considering 'the proofs as a whole,' with due regard to the opportunity of the one who heard the witnesses to judge of their credibility." Close v. Kordulak Bros., 44 N.J. 589, 599 (1965) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). A judge of compensation's factual findings are entitled to substantial deference. Ramos v. M & F Fashions, Inc., 154 N.J. 583, 594 (1998). "We may not substitute our own factfinding for that of the [j]udge of [c]ompensation even if we were inclined to do so." Lombardo v. Revlon, Inc., 328 N.J. Super. 484, 488 (App. Div. 2000). We must accord deference to the judge's factual findings and legal determinations "unless they are

'manifestly unsupported by or inconsistent with competent relevant and reasonably credible evidence as to offend the interests of justice.'" Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 262 (2003) (quoting Perez v. Monmouth Cable Vision, 278 N.J. Super. 275, 282 (App. Div. 1994), certif. denied, 140 N.J. 277 (1995)).

In contending that the judge of compensation erred in reaching his decision, respondent argues that the testimony of petitioner and her experts was not credible, and the testimony of respondent's witnesses was credible. However, we especially defer to a judge of compensation's credibility findings as these determinations are "often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." State v. Locurto, 157 N.J. 463, 474 (1999). Moreover, it is well settled that "a 'judge of compensation is not bound by the conclusional opinions of any one or more, or all of the medical experts.'" Kaneh v. Sunshine Biscuits, 321 N.J. Super. 507, 511 (App. Div. 1999) (quoting Perez v. Capitol Ornamental, Concrete Specialties, Inc., 288 N.J. Super. 359, 367 (App. Div. 1996)). The judge is considered to have "expertise with respect to weighing the testimony of competing medical experts and appraising the validity of [the petitioner's] compensation

claim." Ramos, supra, 154 N.J. at 598. "That [the judge] gave more weight to the opinion of one physician as opposed to the other provides no reason to reverse th[e] judgment." Smith v. John L. Montgomery Nursing Home, 327 N.J. Super. 575, 579 (App. Div. 2000).

Here the judge of compensation found petitioner and her witnesses credible, and, based upon their testimony, determined that petitioner was unable to work and entitled to temporary disability benefits and medical treatment. Applying, as we must, a highly deferential standard of review, our examination of the record leads us to conclude that all the factual determinations made by the judge were amply supported by substantial evidence in the record "and [were] not so wide off the mark as to be manifestly mistaken." Tlumac v. High Bridge Stone, 187 N.J. 567, 573 (2006). Accordingly, we will not disturb the judge's findings that petitioner had demonstrated she was entitled to receive medical treatment and temporary disability benefits for a condition related to work.

Further, respondent contends that the judge of compensation should have denied petitioner's claims and dismissed her petition because she violated the Act's anti-fraud provision, N.J.S.A. 34:15-57.4. We disagree.

The anti-fraud provision establishes a fourth-degree crime for making "a false or misleading statement, representation or submission concerning any fact that is material to that claim for the purpose of wrongfully obtaining the benefits[.]" N.J.S.A. 34:15-57.4(a)(1). Throughout the provision, the terms "purposely or knowingly" has the same meaning as provided for those terms in Chapter 2 of the Criminal Code. N.J.S.A. 34:15-57.4(d).

Respondent contends that the following part of the anti-fraud provision is applicable to petitioner:

> If a person purposely or knowingly makes, when making a claim for benefits pursuant to [the Act], a false or misleading statement, representation or submission concerning any fact which is material to that claim for the purpose of obtaining the benefits, the division may order the immediate termination or denial of benefits with respect to that claim and a forfeiture of all rights of compensation or payments sought with respect to the claim.

> [N.J.S.A. 34:15-57.4(c)(1).]

In defining general culpability standards, the Criminal Code provides that "[a] person acts purposefully with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result." N.J.S.A. 2C:2-2(a)(1). Additionally, "[a] person acts knowingly with respect to a result of his conduct if

A-1132-12T4

he is aware that it is practically certain that his conduct will cause such a result." N.J.S.A. 2C:2-2(a)(2). Thus, the fraudulent statement must be made with a conscious objective to obtain benefits to which one knows he or she is not entitled or with an awareness that the intentional falsehood will cause the desired result of fraudulently obtaining benefits.

Respondent highlights alleged inconsistencies, inaccuracies, and omissions found in the reports or medical records of some of the numerous doctors that petitioner went to for evaluation and treatment. Respondent places particular emphasis on petitioner's certification that she had not filled a certain prescription for Xanax when the pharmacy record showed that she had filled a prescription for Xanax a year earlier. Respondent also stresses that petitioner had burned the tips of her three fingers of her right hand ten years earlier at work and received workers' compensation benefits from respondent, but, when being treated for her 2010 right hand and arm injury, she initially denied having had a prior injury to her right hand. According to respondent, conflicting and inaccurate information in some of the doctors' reports proved that petitioner had committed fraud to receive workers' compensation benefits by intentionally making false and misleading statements to obtain benefits for which she knew she did not qualify.

Petitioner denies making false statements or omissions with the intention of obtaining treatment or other benefits. Further, petitioner argues that the records viewed as a whole show that she accurately reported all her medication, prior treatment, and psychiatric and drug abuse issues.

The Act "'is humane social legislation designed to place the cost of work-connected injury on the employer who may readily provide for it as an operating expense.'" Livingstone v. Abraham & Straus, Inc., 111 N.J. 89, 94-95 (1988) (quoting Hornyak v. The Great Atl. & Pac. Tea Co., 63 N.J. 99, 101 (1973)). The Act represents a bargain between employers and employees because it places the cost of personal injuries arising out of and in the course of employment on the employer, regardless of the employer's negligence, but the employee surrenders his right to pursue other remedies that could yield larger recoveries. N.J.S.A. 34:15-7; Basil v. Wolf, 193 N.J. 38, 53-54 (2007); Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 174 (1985). Because it is socially beneficial legislation, the Act must be interpreted liberally and inclusively. Fitzgerald v. Tom Coddington Stables, 186 N.J. 21, 31 (2006); Sager v. O.A. Peterson Constr., Co., 182 N.J. 156, 169 (2004). The anti-fraud provision is intended to root out fraudulent claims, not merely test an injured person's ability

to remember every detail of a lengthy medical history or to accurately determine what may be material for purposes of receiving treatment or other benefits.

Consequently, in order to implement the remedial social legislation of affording coverage to as many workers as possible, all elements of the anti-fraud provision must be proven by competent evidence for a motion to dismiss to prevail on those grounds. It is not enough that the moving party show the worker made an inaccurate or false statement or omitted material facts. Rather, the moving party must show (1) the injured worker acted purposefully or knowingly in giving or withholding information with the intent that he or she receive benefits; (2) the worker knew that the statement or omission was material to obtaining the benefit; and (3) the statement or omission was made for the purpose of falsely obtaining benefits to which the worker was not entitled.

Even if a petitioner's statements satisfy these requirements of the anti-fraud provision, denial is not mandatory as the provision states that benefits "may" be denied. N.J.S.A. 34:15-57.4(c)(1). Indeed, it has been generally recognized that "not all lies and false statements made by an employee in connection with a workers' compensation claim will cause forfeiture of benefits." 2 Lex K. Larson, Larson's

Workers' Compensation § 39.03 (Rev. ed. 2013). For instance, "[w]here there is no causal connection between the lie and the injury itself, the courts will generally look beyond the false statement and award compensation."[4] Ibid.

Here, the judge of compensation considered the entire record, including petitioner's credible testimony, her persuasive medical witnesses, and the records considered by all the medical witnesses and concluded there was insufficient evidence that petitioner violated the anti-fraud provision. As stated above, the judge's credibility determinations are amply supported by the record and are not manifestly mistaken. See Tlumac, supra, 187 N.J. at 573. From our independent review of the record, we perceive no error here. While some of the alleged inaccuracies or misstatements respondent pointed out may have been material, this alone does not meet the anti-fraud provision's three-part requirement. As petitioner testified credibly that she did not intentionally omit or misrepresent her past medical history, respondent has not proven an essential

---

[4] For instance, failure to report recreational use of drugs on a medical history form, often due to embarrassment or concern for criminality, is not generally material unless it is directly related to the accident or resulting medical condition. See Beck v. Newt Brown Contractors, LLC, 72 So. 3d 982 (La. Ct. App. 2011) (claimant granted benefits despite denial of recreational drug use when accident not caused by drug use).

element of the anti-fraud provision and thus respondent's motion could not prevail.

Next, amicus New Jersey Advisory Council on Safety and Health requests that we find that the burden of proving fraud under the anti-fraud provision must be by clear and convincing evidence as is generally required to prove common law fraud.[5] See Stochastic Decisions, Inc. v. DiDomenico, 236 N.J. Super. 388, 395 (App. Div. 1989), certif. denied, 121 N.J. 607 (1990). As this issue was not raised below, and the judge of compensation appears to have used the lesser standard of proof and still determined that respondent did not prove fraud, we decline to reach this issue on this record.

Finally, respondent's argument that the judge's order was erroneous because it required respondent to pay temporary total disability benefits until petitioner is medically cleared to return to work or until further order of the court is without sufficient merit to warrant extended discussion. R. 2:11-3(e)(1)(E). Temporary disability benefits are payable from "the day that the employee is first unable to continue at work by

---

[5] Amicus concedes that the Court in Liberty Mutual Ins. Co. v. Land, 186 N.J. 163, 174 (2006), when considering the standard under a similar statute, the Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 to -30, held that the standard of proof was by a preponderance of evidence. Amicus argues that we should reach a different decision here because of the remedial social policies behind the Act.

reason of the accident . . . up to the first working day that the employee is able to resume work and continue permanently threat," N.J.S.A. 34:15-38, or until the employee "'is as far restored as the permanent character of the injuries will permit, whichever happens first.'" Cunningham v. Atlantic States Cast Iron Pipe Co., 386 N.J. Super. 423, 427-28 (App. Div.) (quoting Monaco v. Albert Maund, Inc., 17 N.J. Super. 425, 431 (App. Div. 1952)), certif. denied, 188 N.J. 492 (2006). We do not perceive that the judge's order to pay temporary total disability benefits until petitioner is medically cleared to return to work, or until further order of the court, contravened this basic principle. The judge's reasonable order for respondent to seek permission of the court in stopping benefits if petitioner was not medically cleared for work was not an abuse of discretion, especially in light of respondent twice stopping medical temporary benefits prematurely.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION