**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3392-15T1

THOMAS VAN ARTSDALEN,

    Petitioner-Respondent,

v.

FRED M. SCHIAVONE
CONSTRUCTION,

    Respondent-Appellant.

_____

Submitted September 6, 2017 — Decided October 5, 2017

Before Judges Rothstadt and Vernoia.

On appeal from the Department of Labor and
Workforce Development, Division of Workers'
Compensation, Claim Petition No. 2013-24264.

Law Offices of Styliades and Jackson,
attorneys for appellant (Timothy J. Mello,
on the brief).

Petro Cohen Petro Matarazzo, PC, attorneys
for respondent (Steven S. Lubcher, on the
brief).

PER CURIAM

    In this workers' compensation matter, the employer, respondent Fred M. Schiavone Construction, appeals from the court's March 10, 2016 judgment finding its employee, petitioner

Thomas Van Artsdalen, 47.5% permanently partially disabled as a result of a compensable injury. On appeal, Schiavone contends that the judge's findings about Van Artsdalen's work history and his injuries being inoperable were not supported by "substantial evidence in the record." It also contends the judge's assessment that Van Artsdalen suffered a 47.5% permanent partial disability constituted an abuse of her discretion because he could perform his daily activities, had conservative treatment and does not complain about his pain.

The judge of compensation made her determination after conducting a trial at which Van Artsdalen was the only witness as the parties agreed to the court's consideration of their experts' reports in lieu of testimony. The parties also stipulated that Van Artsdalen suffered a compensable injury on January 26, 2012, when he fell while he was at work as a carpenter and carrying sixty to seventy pounds of plywood.

Prior to the incident, Van Artsdalen, who was fifty-three years old at the time, worked as a union carpenter for thirty-four years, spending most of that time working for Schiavone. Dating back to 1992, Van Artsdalen was treated for lower back discomfort for a few weeks by a chiropractor, and he suffered some symptoms of minor lower back discomfort again in 2008, but otherwise he had not experienced any persistent problems prior to his fall.

2

Despite his fall on January 26, 2012, and the related pain, Van Artsdalen completed his workday. He consulted with a doctor after work and again two days after the fall. He attempted to return to work the day after the incident, but there were no work assignments available. When he did go back to work on January 30, 2012, he could not finish his shift due to his lower back pain.

In February 2012, Schiavone sent Van Artsdalen for medical treatment for his lower back. The following month, he underwent an MRI and was prescribed physical therapy and pain management. Van Artsdalen continued treatment through May 5, 2012, when he was cleared to return to work. Despite being cleared, Van Artsdalen did not return to work until July 12, 2012, due to the lack of available job assignments. He worked from July 2012 through September 2013, when he retired because he could no longer endure the pain.

Van Artsdalen underwent an additional MRI in 2013 and was evaluated by another physician who confirmed his continuing pain was due to his January 2012 injury. After he filed his petition for compensation benefits, Van Artsdalen resumed treatment with the same physician that Schiavone had sent him to in 2012. He received an additional MRI and more pain management, including an epidural injection. The treatment terminated in September 2014 and he never sought any additional treatment.

A-3392-15T1

Van Artsdalen testified about his pain and the limitations caused by his injury. He stated that he had difficulty lifting things, and suffered pain when he bent over while getting dressed or performing household chores. He described how he was subject to the sudden onset of sharp, stabbing pain that throbbed, especially in his groin area. He treated his pain with over-the-counter medications and ice. Van Artsdalen testified that his pain at times interfered with his ability to sleep and prevented him from lifting heavier objects. Despite his pain, Van Artsdalen stated he was able to perform his daily activities that included household chores and transporting his grandchild to and from school.

In pursuit of his workers' compensation claim, Van Artsdalen was evaluated by two medical experts who issued reports about his injury and level of disability. Van Artsdalen's expert, Dr. John L. Gaffney, found that Van Artsdalen sustained a 52.5% permanent partial disability. Schiavone's expert, Dr. Mark E. Maletsky disagreed and found that Van Artsdalen experienced only a 2% permanent partial disability. The experts based their opinions on their examination of Van Artsdalen, his reported history of his injury, treatment and current level of pain, medical records of his treatment and diagnostic imaging.

After considering the evidence, the judge of compensation placed her decision on the record, which she later amplified in a written statement filed under Rule 2:5-1. In her oral decision, the judge considered the medical reports and found Schiavone's expert to be less credible than Van Artsdalen's and rejected his opinion as to the degree of permanent partial disability. The judge found Maletsky's assessment of Van Artsdalen to be "not in line with the treatment, the loss of employment, the length of time [Van Artsdalen] was out of work and the diagnostic studies." Although the judge determined that Gaffney was more credible, she also "disregard[ed] his estimate of permanent partial disability." The judge found Van Artsdalen to be credible and found that he suffered a 47.5% permanent partial disability.

The judge of compensation entered judgment on March 10, 2016, and Schiavone filed its appeal. On June 7, 2016, the judge issued her written amplification of her reasons. In her detailed statement, the judge began by noting Van Artsdalen's lengthy work history and his lack of any prior "significant back injury or extensive back care" during that time. She described how after the injury he was forced to miss work despite his attempts to "return to full time employment." She found the fact that Van Artsdalen did not try to claim that he was totally disabled added to her finding that his testimony was credible, as did his "stoic-

ness, forthrightness . . . [and] his desire to return to the only employment that he has ever known."

The judge described in detail the diagnostic imaging results that depicted injuries to various levels of Van Artsdalen's spine, recognized he did not have any surgery, and concluded the injuries were "inoperable [as n]o surgical intervention was available to relieve [Van Artsdalen's] pain due to the multiple levels and type of . . . disc pathology." She also stated that Van Artsdalen "simply was inoperable due to his condition of multiple levels impeded in [his] lumbar spine. Therefore, his disability rating is construed as worse than one who could obtain relief from a procedure or operation."

Addressing the experts' reports, the judge described Gaffney's findings about Van Artsdalen's pain, the ineffectiveness of the epidural injections, and the doctor's conclusions that Van Artsdalen suffered from "chronic pain and lumbar fibromyositis syndrome" and that Van Artsdalen's injuries caused "restriction of function." The judge concluded that Gaffney's findings were consistent with his examination of Van Artsdalen and the diagnostic studies. She stated "it was understood that surgery could not be wisely undertaken in [Van Artsdalen's] condition to obtain an optimum result bettering his condition."

A-3392-15T1

Turning to Maletsky's report, the judge stated that the report was not as credible as Gaffney's, finding Maletsky's rejection of Van Artsdalen's inability to return to work "when he worked his entire life with few out days" and Maletsky's reliance on insignificant x-rays from 2008 undermined his credibility. The judge also observed that Maletsky "not signify[ing] the extent of the diagnostics and the effect of the multiple layers of discs now impaired . . . . discount[ed] [his] . . . understanding of [Van Artsdalen's] injuries and his permanent disability." She also found that Maletsky did not "adequately address [Van Artsdalen's] increased symptomology as being related to [the] last work incident."

In conclusion, the judge "disregarded the numbers of both doctors to assess [Van Artsdalen's] significant permanency impairment and loss of functionality." In reaching her finding of 47.5% permanent partial disability, the judge relied upon Van Artsdalen's testimony, the doctor's examinations and the objective evidence of his injuries. She stated:

> The court does find that the progression of substantial injuries to [Van Artsdalen] and the multiple levels of disc pathology, along with the inability to operate on his lumbar spine condition resulted in his current symptomology resulting in a 471/2% permanent partial disability award. Specifically, for the orthopedic and neurologic residuals of the lumbar spine for right foraminal disc

A-3392-15T1

protrusion at L1-2; bulging disc at L2-3 and L3-4 with disc material bulging into the foraminal regions bilaterally, right paracentral disc protrusion at L4-5 with disc bulge at L4-5 and bulging disc at L5-S1 status post spinal injection with persistent radiculopathy and chronic pain.

On appeal, Schiavone contends the judge's findings regarding Van Artsdalen's work history——that he worked for that length of time without missing many days——and Van Artsdalen's injury being inoperable were important to her conclusion but unsupported by the evidence. It also argues that the judge's determination of 47.5% permanent partial disability was similarly unfounded because Van Artsdalen stopped receiving treatment in 2014, does not take daily pain medications, is not under any restrictions, and "[n]one of the physicians, the treating physicians . . . or either parties['] medical expert, found that [Van Artsdalen] was in need of a surgical consult or surgery."

Our review of decisions in workers' compensation cases is "limited to whether the findings made could have been reached on sufficient credible evidence present in the record . . . with due regard also to the agency's expertise." Hersh v. Cty. of Morris, 217 N.J. 236, 242 (2014) (alteration in original) (quoting Sager v. O.A. Peterson Constr., Co., 182 N.J. 156, 164 (2004)); see also Renner v. AT&T, 218 N.J. 435, 448 (2014), and "to the opportunity of the one who heard the witnesses to judge . . . their

credibility." Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 260 (2003) (quoting Reinhart v. E.I. Dupont De Nemours, 147 N.J. 156, 163-64 (1996)). We give those factual findings "substantial deference." Bellino v. Verizon Wireless, 435 N.J. Super. 85, 94 (App. Div. 2014) (citing Ramos v. M & F Fashions, Inc., 154 N.J. 583, 594 (1998)). "We may not substitute our own factfinding for that of the [j]udge of [c]ompensation even if we were inclined to do so." Ibid. (alterations in original) (quoting Lombardo v. Revlon, Inc., 328 N.J. Super. 484, 488 (App. Div. 2000)). Deference must be accorded "unless . . . 'manifestly unsupported by or inconsistent with competent relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Lindquist, supra, 175 N.J. at 262 (2003)). Where "[i]t is the legal consequences flowing from those facts that form the basis of [the] appeal[, w]e owe no particular deference to the judge of compensation's interpretation of the law." Sexton v. Cty. of Cumberland/Cumberland Manor, 404 N.J. Super. 542, 548 (App. Div. 2009) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A compensation judge is considered to have expertise in weighing the testimony of competing experts and assessing the validity of the claim. Ramos, supra, 154 N.J. at 598. The judge is "not bound by the conclusional opinions of any one or more, or

all of the medical experts." <u>Bellino</u>, <u>supra</u>, 435 <u>N.J. Super.</u> at 95 (quoting <u>Kaneh v. Sunshine Biscuits</u>, 321 <u>N.J. Super.</u> 507, 511 (App. Div. 1999)). We will not reverse a judgment simply because the judge gave more weight to the opinion of one physician over the other. <u>Smith v. John L. Montgomery Nursing Home</u>, 327 <u>N.J. Super.</u> 575, 579 (App. Div. 2000).

Applying these standards, and based upon our careful review of the record and applicable legal principles, we are constrained to vacate the judgement and remand for reconsideration as we conclude there was no evidence to support the findings that Van Artsdalen's injury was inoperable or that he took few days off during his years of employment. While these findings were central to the judge of compensation's decision, as demonstrated by her conclusion that Van Artsdalen's "disability rating is construed as worse" because his injuries were inoperable, neither Van Artsdalen nor the experts stated these facts or opinions, nor was there any other evidence presented from which the judge could have logically inferred them.

Judgement vacated and remanded for reconsideration. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3392-15T1