**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2205-17T2

ALMA CAMARENA,

      Petitioner-Appellant,

v.

SPRINT PCS,

      Respondent-Respondent,

and

THE STATE OF NEW JERSEY
SECOND INJURY FUND,

      Respondent.

_____

Argued May 22, 2019 – Decided June 24, 2019

Before Judges Alvarez and Reisner.

On appeal from the Department of Labor, Division of Workers' Compensation, Claim Petition No. 2001-22510.

Mario Apuzzo argued the cause for appellant.

Michelle L. Duffield argued the cause for respondent Sprint PCS (Capehart & Scatchard, PA, attorneys; Michelle L. Duffield, on the brief).

Rebecca A. Glick, Deputy Attorney General, argued the cause for respondent State of New Jersey Second Injury Fund (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Jennifer B. Pitre, Deputy Attorney General, on the brief).

PER CURIAM

In 1999, while an employee of respondent Sprint PCS, petitioner Alma Camarena suffered injuries from a work-related automobile accident. The March 21, 2003 order approving settlement of her claim stated the workers' compensation award was based on: "[p]ermanent orthopedic disability of [thirty percent] of partial total for residuals for disc bulging at C6-C7 and disc protrusion at L4-L5 and L5-S1." In 2005, petitioner filed for modification, claiming her injuries had worsened since the initial award. The matter was tried in 2016. Workers' Compensation Judge George H. Gangloff, Jr., dismissed the petition with prejudice and dismissed the Second Injury Fund.[1] Petitioner appeals and we affirm.

---

[1] Plaintiff also filed a Second Injury Fund Verified Petition. See N.J.S.A. 34:15-95. However, the trial before the judge of compensation was bifurcated and the Second Injury Fund waived its appearance pending the outcome of the proceedings.

Petitioner alleged she suffered from pain and discomfort, mostly to the right side of her body, as a result of the 1999 accident. MRIs dating back to that time showed "[m]ulti level degenerative changes in the spine with interval development of an annular tear and disc protrusion at C5-6. There has also been interval relative normalization of the cervical lordosis."

In July 2002, petitioner was involved in another motor vehicle accident. She had been the restrained driver of a small passenger rental car, and was hit from behind by a Jeep Cherokee. She hit her knee and thigh against the steering wheel and the steering wheel collapsed onto her knees. After the accident, petitioner "reported continuous low back pain and knee pain, along with upper back pain and mid-back pain" and "presented with substantially decreased ranges of cervical and lumbar motion, with weaknesses noted in specific areas of the upper and lower extremities."

Petitioner has fallen twenty-eight times between the 1999 accident and May 2015. As a result of these falls, she has experienced increased pain in the neck and back, broken bones and fractures. When she fell in 2013, she broke her left hand, requiring surgery. She has undergone several other surgeries over the years, in addition to receiving epidural injections for lower back pain, injections of cortisone in her hands for carpal tunnel syndrome and neck pain,

physical therapy, and rehabilitation. In her home state, petitioner is provided with a health aide forty hours a week during the day, and twelve hours a week at night.

Petitioner's medical expert opined she was totally disabled and thus unable to work. He examined her in 2011, 2014, and 2016. On each occasion, he said she complained of the same pain and symptoms.

The expert knew that petitioner had injured her right knee during a second car accident in 2002, but he denied that her evolving complaints might be attributable to events subsequent to the 1999 injuries. He was unaware that the 2002 motor vehicle accident resulted in injuries other than to her right knee. When asked about a June 23, 2004 MRI showing a new disc herniation in petitioner's neck, the expert said he did not know if it could have been caused by the 2002 accident.

Petitioner also presented psychiatric testimony. Having evaluated petitioner in 2011, 2014 and 2016, the expert found her to be exhibiting psychotic symptoms that might be associated with bipolar disorder. The psychiatric issues developed in 2002, however, and in the expert's opinion were unrelated to the accident. The employer's psychiatric expert testified that petitioner's mental health issues pre-dated the 1999 accident.

A-2205-17T2

The employer's orthopedic expert opined that petitioner's 2002 motor vehicle accident and the medical treatment which followed, and the serious fall in 2004, were unrelated to the 1999 accident. The expert testified that her current medical conditions were far removed from the 1999 accident and she was not in further need of treatment for those injuries.

The judge reviewed petitioner's extensive medical records, which he described as being "approximately a foot thick." He discussed them in detail in his written opinion. The judge observed that petitioner's orthopedic expert's testimony strayed from the course of medical treatment charted in the medical records. The expert was not familiar with the 2002 accident, and the treatment for those injuries. Petitioner's treating physician's record indicated, however, she suffered back, neck and leg injuries from the 2002 car accident. After the 2004 fall, petitioner obtained another MRI, which showed a "new left paramedian to lateral component to this [C5-6] disc herniation." Thereafter

> petitioner underwent surgery for a cervical discectomy and fusion at C5-6 followed by physical therapy and treatment for her right knee, low back and neck pain. In a January 2007 report [] records documented that the petitioner fell again and hurt her ribs on the left side. An August 2007 MRI revealed an L4-5 disc herniation along with an[] L5-S1 disc herniation. Petitioner began taking prescribed oxycodone in that time period. In the spring of 2007 petitioner underwent revision surgery of her cervical spine fusion resulting in a fusion from C5-

A-2205-17T2

C7. Nine months later, in January 2008 [] petitioner fell again resulting in "some exacerbation of her radiating right arm symptoms as well as her neck pain." She continued on oxycodone. In October 2008 petitioner underwent another cervical MRI. The history noted on that report states, "Fall and neck pain."

The judge found that no causal connection existed between petitioner's current condition and the 1999 accident. The psychiatric testimony established that there were no psychiatric disabilities attributable to the accident. Contrary to petitioner's testimony, the medical records established that she injured more than just her knee during the 2002 motor vehicle accident. The judge considered that contradiction in her testimony to be "of significant import as to causation." In light of the conflicts between her testimony and the medical records, and the diagnoses offered by her psychiatric expert, he found "little reliability in [her] testimony."

Additionally, the medical records established re-injury to petitioner's cervical spine from a fall in 2004, when her "right knee – which she injured in the 2002 MVA – 'gave way.'" That fall resulted in "new disc pathology and neurologic compromise in the petitioner's cervical spine." Since the judge did not find a causal relationship between petitioner's current back issues or psychiatric issues as a result of the 1999 work accident, she "failed in proving her claim of permanent, total disability."

6

Now on appeal, petitioner raises the following points:

POINT I
THE COMPENSATION COURT'S FINDING THAT PETITIONER DID NOT PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT THE 1999 COMPENSABLE ACCIDENT IS A PROXIMATE CAUSE OF HER INCREASED DISABILITY THAT TODAY IS TOTAL AND PERMANENT IS MANIFESTLY UNSUPPORTED BY OR INCONSISTENT WITH THE COMPETENT RELEVANT AND REASONABLE CREDIBLE EVIDENCE IN THE RECORD AND OFFENDS THE INTERESTS OF JUSTICE.

A. The Petitioner Proved By A Preponderance Of The Evidence That Her Condition Worsened Following The 1999 Accident Such That Today She Is Totally and Permanently Disabled And That The 1999 Accident Is A Proximate Cause Of That Total Disability.

1. Petitioner proved by a preponderance of the evidence that her disability increased after the 2003 settlement making her totally and permanently disabled.

2. The Court Erred In Finding That Petitioner Did Not Prove By A Preponderance Of The Evidence That Her Increased Disability Which Has Made Her Totally And Permanently Disabled Is Related To Her Work-Related Accident Of 1999.

a. The court erred in finding that petitioner's falls broke the chain of

7

causation from the 1999 motor vehicle accident.

b. The court erred in finding that the 2002 auto accident broke the chain of causation from the 1999 motor vehicle accident.

B. The Court Failed to Properly Consider Petitioner's Pre-Existing Psychiatric Disability.

"Appellate review of workers' compensation cases is 'limited to whether the findings made could have been reached on sufficient credible evidence present in the record . . . with due regard also to the agency's expertise[.]'" Hersh v. Cty. of Morris, 217 N.J. 236, 242 (2014) (quoting Sager v. O.A. Peterson Constr., Co., 182 N.J. 156, 164 (2004)). "A judge of compensation's factual findings are entitled to substantial deference." Bellino v. Verizon Wireless, 435 N.J. Super. 85, 94 (App. Div. 2014) (citing Ramos v. M & F Fashions, Inc., 154 N.J. 583, 594 (1998)).

We do not substitute our own factfinding for that of the judge of compensation. Lombardo v. Revlon, Inc., 328 N.J. Super. 484, 488 (App. Div. 2000). The appellate court must defer to the factual findings made by the judge of compensation "considering the proofs as a whole, with due regard to the opportunity of the one who heard the witnesses to judge their credibility."

Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 262 (2003) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)).

This deference is owed to the judge of compensation's findings "unless they are 'manifestly unsupported by or inconsistent with competent relevant and reasonably credible evidence as to offend the interests of justice.'" Id. at 262-63 (quoting Perez v. Monmouth Cable Vision, 278 N.J. Super. 275, 282 (App. Div. 1994)). However, the judge of compensation's legal conclusions are "not entitled to any deference and, thus, are reviewed de novo." Hersh, 217 N.J. at 243 (citing Williams v. A & L Packing & Storage, 314 N.J. Super. 460, 464 (App. Div. 1998)). The petitioner has the burden of proving by a preponderance of the evidence that the work-related condition or incident was a substantial contributing factor of his or her occupational disease. Lindquist, 175 N.J. at 263.

Judges of compensation have "expertise with respect to weighing the testimony of competing medical experts and appraising the validity of [a petitioner's] compensation claim." Ramos, 154 N.J. at 598. We are also "required to defer to the judge of compensation's expertise in analyzing medical testimony and abide by the long-standing principle that a 'judge of compensation is not bound by the conclusional opinions of any one or more, or all of the

9

medical experts.'" Kaneh v. Sunshine Biscuits, 321 N.J. Super. 507, 511 (App. Div. 1999) (quoting Perez v. Capitol Ornamental, Concrete Specialties, Inc., 288 N.J. Super. 359, 367 (App. Div. 1996)).

In this case, the judge made detailed findings of fact after his careful and thorough review of the medical records. Relying on his own knowledge of petitioner's medical history, he rejected the testimony of petitioner's orthopedic expert because that individual knew so little about the 2002 accident and the 2004 fall. The judge relied upon the employer's expert because he had a more accurate and complete understanding of those same records petitioner's expert had reviewed. The judge's rationale for weighing the experts' testimony differently was eminently reasonable.

Petitioner has the burden of establishing both legal and medical causation. Lindquist, 175 N.J. at 259. She has established neither. The 2002 motor vehicle accident was an independent intervening cause. As a result of that injury in 2004, her knee later gave out causing her to fall and again worsen her injuries – for reasons unrelated to the 1999 incident. The 2002 motor vehicle accident and her numerous falls were clearly intervening independent causes which broke the chain of causation from the 1999 accident to the present.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION