**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2048-19T3

BARTOLO A. DONZELLA,

    Plaintiff-Appellant,

v.

SG PERFORMANCE
PLASTICS CORP.,

    Defendant-Respondent.

_____

           Submitted December 16, 2020 – Decided January 12, 2021

           Before Judges Fuentes, Rose and Firko.

           On appeal from the New Jersey Department of Labor and Workforce Development, Division of Workers' Compensation, Claim Petition Nos. 2015-28694 and 2017-25905.

           Sean M. Dillon, LLC, attorneys for appellant (Sean M. Dillon, on the brief).

           Weber, Gallagher, Simpson, Stapleton, Fires & Newby, LLP, attorneys for respondent (Cheryl A. Binosa and Kelsi L. Feldman, on the brief).

PER CURIAM

Appellant Bartolo A. Donzella appeals from the December 13, 2019 order entered by the Division of Workers' Compensation dismissing his two claim petitions. Following a trial, the judge of compensation found a lack of credible evidence to prove Donzella suffered physical injuries and hearing loss as a result of excessive noise exposure at his former place of employment. Because the factual findings supporting the decision were based on substantial credible evidence, we affirm.

Donzella was employed by respondent SG Performance Plastics Corp. (SG) at its manufacturing warehouse in August 2015. He worked as a "Bihler operator," fabricating metal ball bearings for automobiles. In the course of his employment, Donzella and approximately thirty other employees were surrounded by multiple machines. He was provided with eyeglasses and gloves but no hearing protection equipment.

A month later in September 2015, Donzella presented to the emergency room at St. Joseph's University Medical Center in Paterson. He reported that he tried to get out of bed to go to work but was "very dizzy and . . . did not know what was happening." Following an evaluation, Donzella was prescribed Meclizine, a medication for treatment of motion sickness and vertigo. He was discharged with instructions to follow-up with his primary care physician and to

A-2048-19T3

undergo an evaluation with Dr. Alfredo Festa, an ear, nose, and throat (ENT) doctor. Donzella never returned to work for SG following his emergency room visit.

On October 27, 2015, Dr. Festa evaluated Donzella for the first and only time. During the office visit, Donzella complained of dizziness and ringing in his ears that had been persisting for about one month. Dr. Festa did not diagnose any abnormalities as a result of his evaluation of Donzella but prescribed a thirty-day regimen of Meclizine to alleviate his dizziness. In his report, Dr. Festa noted Donzella's hearing levels were normal.

On November 30, 2015, Donzella was evaluated by Dr. Daniel Samadi, who is also an ENT. Donzella complained of dizziness, tinnitus in both ears, dizziness that worsened with increased activity, and sensitivity to loud noises. Dr. Samadi opined that Donzella suffered from bilateral tinnitus, bilateral sensorineural hearing loss, and disorders of the Eustachian tube. After a follow-up visit on August 18, 2017, Dr. Samadi reported similar findings and added deviated nasal septum and hypertrophy of nasal turbinates to his diagnoses.

On November 10, 2015, Donzella filed his first claim petition alleging accidental orthopedic, neurological, and neuropsychiatric injuries, including dizziness, vertigo, and hearing loss. Almost two years later on September 27,

2017, he filed his second claim petition alleging the same injuries resulting from occupational exposure to excessive noise from August 3, 2015 through September 30, 2015. The petitions were consolidated for purposes of the trial. The evidence at the trial included testimony from Donzella, medical expert reports for both Donzella (Dr. Festa, Dr. Samadi, and Dr. Gerald West, an ENT), and SG (Dr. Steven Freifeld, an ENT) that were submitted by stipulation of the parties without live testimony.

At trial, Donzella testified about his injuries and their impact on his everyday activity. His permanency expert, Dr. West, opined in his report that based upon his review of Donzella's medical history and after performing a physical examination, Donzella was suffering from bilateral disabling tinnitus "secondary to the extreme noise exposure that [he] suffered in 2015." Dr. West estimated Donzella suffered from "a permanent[,] partial disability of [twenty-five percent] for the tinnitus that is present and permanent and secondary to the severe noise exposure." The physical examination and hearing test performed by Dr. West upon petitioner were within normal limits.

SG's expert, Dr. Freifeld, evaluated Donzella on September 26, 2018. Donzella reported he was now employed by the State of New Jersey Water Commission for a year-and-a-half and has "ear protection" to guard against noise

A-2048-19T3

exposure in his current work environment. Donzella no longer complained of dizziness but reported bilateral hearing loss, which started in August 2015, pressure and pain in his ears, and sensitivity to noise. Dr. Freifield opined that Donzella's hearing was within normal limits; any vestibular neuronitis resolved; he experienced intermittent, subjective tinnitus; and suffered from hyperacusis.[1] Within a reasonable degree of medical probability, Dr. Freifeld concluded that Donzella's symptoms did not result from exposure to noise and was unrelated to his employment with SG. At the conclusion of the trial, the judge of compensation made comprehensive findings of fact and conclusions of law in a written opinion.

The judge of compensation noted Donzella was incredulous and gave inconsistent testimony. For example, the judge highlighted that Donzella consistently described the machines in the SG warehouse as "loud," but admitted on cross-examination that he was able to hear directions and instructions from his supervisor on the floor as long as the supervisor raised his voice. Moreover, the judge emphasized that neither Dr. Festa nor Dr. Samadi "opined as to any

---

[1] Hyperacusis has been defined as "a heightened awareness of sounds," "disturbed loudness function," and "discomfort for sounds that would be acceptable to most normally hearing people." Richard S. Tyler, et al., A Review of Hyperacusis and Future Directions: Part I. Definitions and Manifestations, 23 American Journal of Audiology 402-19 (2014).

A-2048-19T3

causal connection between [Donzella's] work environment and his symptoms of dizziness/loss of hearing."

Equally perplexing for the judge of compensation was Dr. West's inconsistent and "troubling" narrative report finding Donzella suffered from bilateral tinnitus secondary to employment-based noise exposure, however, "[t]here [was] no data, study or reference of any kind to suggest that this condition was caused by the limited noise exposure." The judge gave greater weight to Dr. Freifeld's opinion. Dr. Freifeld diagnosed Donzella with vestibular neuronitis, a condition that can occur in an individual at any time, and the expert concluded that Donzella's condition is completely unrelated to noise exposure at SG.

Our role in reviewing a judge of compensation's decision is limited to examining "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole, with due regard to the opportunity of the one who heard the witnesses to judge of their credibility." Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 262 (2003) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)). We give those factual findings "substantial deference." Bellino v. Verizon

A-2048-19T3

Wireless, 435 N.J. Super. 85, 94 (App. Div. 2014) (citing Ramos v. M & F Fashions, Inc., 154 N.J. 583, 594 (1998)).

"We may not substitute our own factfinding for that of the [j]udge of [c]ompensation even if we were inclined to do so." Ibid. (alterations in original) (quoting Lombardo v. Revlon, Inc., 328 N.J. Super. 484, 488 (App. Div. 2000)). We will only disturb the judge of compensation's decision if it is "manifestly unsupported by or inconsistent with competent relevant and reasonably credible evidence as to offend the interests of justice." Lindquist, 175 N.J. at 262 (quoting Perez v. Monmouth Cable Vision, 278 N.J. Super. 275, 282 (App. Div. 1994)).

A compensation judge is considered to have expertise in weighing the testimony of competing experts and assessing the validity of the claim. Ramos, 154 N.J. at 598. The judge is "not bound by the conclusional opinions of any one or more, or all of the medical experts." Bellino, 435 N.J. Super. at 95 (quoting Kaneh v. Sunshine Biscuits, 321 N.J. Super. 507, 511 (App. Div. 1999)). We will not reverse a judgment simply because the judge gave more weight to the opinion of one physician over the other. Smith v. John L. Montgomery Nursing Home, 327 N.J. Super. 575, 579 (App. Div. 2000).

A-2048-19T3

Based upon review of the record, in light of our limited scope of review, we are satisfied that the judge's factual and credibility findings are amply supported by sufficient credible evidence in the record, and we find no basis to disturb them.  Sheffield v. Schering Plough Corp., 146 N.J. 442, 461 (1996).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

8

A-2048-19T3