**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2739-19

SANDRA MARTONE,

     Petitioner-Appellant,

v.

COMMUNITY MEDICAL
CENTER,

     Respondent-Respondent.

_____

Argued October 18, 2021 – Decided December 29, 2021

Before Judges Messano and Accurso.

On appeal from the State of New Jersey Department of Labor and Workforce Development, Division of Workers' Compensation, Claim Petition No. 2013-34743.

Danielle S. Chandonnet argued the cause for appellant (Shebell & Shebell, LLC, attorneys; Danielle S. Chandonnet, on the brief).

Anne Hammill Pasqua argued the cause for respondent (Capehart & Scatchard, PA, attorneys; Michael C. Rose, of counsel; Michael P. McCaffrey, on the brief).

PER CURIAM

Appellant Sandra Martone filed a workers' compensation petition alleging that on November 15, 2013, while working as an emergency room technician for respondent Community Medical Center (CMC), she fell sustaining an injury to her right knee. CMC acknowledged the claim was compensable.[1] After three full- and partial-knee replacement surgeries, physical therapy, and other procedures over many years, Martone moved for temporary medical benefits, alleging a fourth full-knee replacement surgery was reasonable and necessary to alleviate her pain and improve her range of motion. CMC filed opposition, and the Judge of Workers' Compensation (JWC) heard testimony to decide if CMC should be compelled to pay for Martone's surgery in accordance with N.J.S.A. 34:15-15 (Section 15), the relevant provision of the Workers' Compensation Act (Act), N.J.S.A. 34:15-1 to -142.

I.

The evidence at the hearing was largely undisputed. Between the dates of March 2014 and February 2015, Dr. Christopher Passariello performed multiple procedures on Martone's right knee because of continued complaints of pain,

_____

[1] Martone amended her complaint to include injuries relating to her shoulder, back, and mental health, but we limit this opinion to the order under review, which only pertains to her claim of a compensable injury to her right knee.

including a total right knee replacement, bilateral knee manipulation under anesthesia, and a right knee arthroscopy. Following each surgery, Martone attended physical therapy and received other treatment, but eventually she was unable to continue working due to ongoing pain and her need for pain medication, which she could not take while working at CMC. Dr. Jennifer Yanow, a pain management specialist, began treating Martone in August 2015, but released her from care in January 2016 after unsuccessful anesthetic blocks to several nerves. Dr. Yanow concluded no other medical treatment could alleviate Martone's symptoms.

Martone sought a second opinion from Dr. Zachary Post, an orthopedic surgeon, who found she had "less than ideal motion." However, Dr. Post took x-rays and found the knee replacement was well-placed and well-fixed, with no evidence of loosening or mechanical failure to the knee.

Still, Martone complained of stiffness and limited range of motion. In May and July 2016, Dr. Arthur Mark, CMC's authorized workers' compensation surgeon, performed a right revision of the total knee replacement, a scar revision, and manipulation under anesthesia, but these did not alleviate Martone's pain or improve her mobility. In December 2016, Dr. Mark performed

a revision of the tibial component of the total knee replacement and a synovectomy.

Aside from her visits with Dr. Mark and Dr. Post, Martone saw various orthopedic surgeons who provided independent re-evaluations, each concluding that in view of the multiple failed surgeries, Martone would be a poor candidate for further surgical intervention. One noted, "[Martone]'s pain seems to be out of proportion to what [he] would expect in a typical patient." Martone was evaluated by another pain specialist in February 2017 who noted her presentation was "complex" and found Martone to be manipulative and "volitive" towards obtaining continued high amounts of pain medication. A month later, Martone underwent a pain management psychological exam which found she exhibited symptoms of Somatoform Pain Disorder and Prescriptive Opioid Dependence/Tolerance.[2] On April 21, 2017, Dr. Mark stated he could offer no further curative treatment and discharged Martone.

In August 2017, Martone returned to Dr. Post, alleging she was still in pain. Dr. Post had not viewed Dr. Mark's notes nor his operative reports on the last two revisions in 2016, but, nevertheless, he concluded Martone would be a

---

[2] These findings were consistent amongst various medical professionals who evaluated Martone.

good candidate for a revision of her right knee. Martone sought an evaluation with Dr. Alan Nasar in May 2018 who opined he would consider revision of the right knee as recommended by Dr. Post. Using Dr. Nasar's medical report for support, Martone filed her motion for temporary medical benefits in October 2018.

Given the extensive treatment and countering expert opinions, the JWC wisely ordered CMC to authorize a one-time need-for-treatment examination to render an opinion on the benefits of further surgery. Accordingly, Dr. Michael Sidor, an orthopedic surgeon, examined Martone in March 2019. He concluded Martone was at maximum medical improvement and found there was no need for further medical treatment.

However, in April 2019, Martone revisited Dr. Post, who reiterated she would be a good candidate for total right knee reconstructive surgery. Martone filed an additional motion and attached Dr. Post's report in support. CMC opposed, contending Martone was already examined by the authorized provider as well as a second doctor at the court's request, both of whom concluded further surgery was unwarranted.

All three experts testified at trial. Dr. Post stated Martone's femoral component "appeared to be too distal, which contributed to her tightness and

tension . . . and her lack of ability to get full extension." He explained doctors can "reposition the knee, proximalizing [the knee] . . . to open up the extension space giving [Martone] more room for her knee to obtain full extension," or distalizing the knee, i.e., closing the extension space. The doctor acknowledged, however, that either procedure may lead to instability or tightness. Although Dr. Post concluded Martone "clearly ha[d] arthrofibrosis," "one of the more difficult problems [doctors] face in revision knee replacement," he nonetheless was willing to operate. Dr. Post could not guarantee the revision surgery would cure Martone's condition, and he admitted Martone's condition could worsen, resulting in further loss of motion.

Dr. Mark testified he intentionally placed the femoral component lower to ensure the kneecap tracked into the implant, which he described as the standard of care. He concluded any further surgical revisions had a low probability of success, because there was no evidence of loosening or mechanical problems with the artificial knee, Martone had arthrofibrosis, and pain management treatments were ineffective.

Dr. Sidor opined the pattern following Martone's prior surgeries demonstrated she would lose extension and flexion after surgery, which is consistent with a diagnosis of fibrosis. Dr. Sidor testified the location of the

A-2739-19

femoral component of Martone's knee implant did not contribute to her condition. Dr. Sidor also testified that further surgery would likely result in bone loss, because the existing implant was well-fixed and difficult to remove. If additional surgery were performed, Dr. Sidor expressed concern about possible infection, and that Martone would be "worse than she is now."

In a cogent, comprehensive opinion, the JWC found all three experts were credible witnesses, but he disagreed with Dr. Post's opinion that the location of the implant was the cause of Martone's pain. Rather, the judge credited Dr. Sidor's conclusion that Martone's pain was caused by fibrosis, as evidence by a post-surgery pattern in which Martone would lose extension in the joint. The court expressed concerns regarding the risks associated with a fourth procedure, noting Martone underwent multiple surgeries and experienced additional symptoms afterwards, indicating she was "actually worse after surgery."

The judge credited Dr. Mark's opinion that further surgery will create additional arthrofibrosis, contributing to Martone's pain and inability to move. The judge explained that if he "felt there was any reasonable likelihood surgery would help [Martone], [he] would have no hesitation," but that was "not the case." He entered an order denying her motion for medical treatment.

On appeal, Martone urges us to reverse the order, arguing it was unsupported by the evidence and expert testimony in the record. Martone asserts that because the JWC found Dr. Post to be credible, it was improper to deny her treatment the doctor recommended to help relieve her pain and improve her function. We disagree.

"Appellate courts approach the factual findings made by a workers' compensation court with 'substantial deference' in recognition of the compensation judge's expertise and opportunity to hear witnesses and assess their credibility." Goulding v. NJ Friendship House, Inc., 245 N.J. 157, 167 (2021) (quoting Ramos v. M & F Fashions, Inc., 154 N.J. 583, 594 (1998)). "An agency's interpretation of a statute, however, although entitled to some weight, is not binding on the reviewing court." Ibid. (quoting Brock v. Pub. Serv. Elec. & Gas Co., 149 N.J. 378, 383 (1997)).

"The Act requires employers to provide treatment to injured employees when the treatment is 'necessary to cure and relieve the worker of the effects of the injury and to restore the functions of the injured member or organ where such restoration is possible . . . .'" Martin v. Newark Pub. Schs., 461 N.J. Super. 330, 338 (App. Div. 2019) (quoting N.J.S.A. 34:15-15). Although the Act is

8

liberally construed in favor of providing coverage to injured workers, Goulding, 245 N.J. at 167, "[w]hether the treatment is characterized as curative or palliative, [it] is compensable if competent medical testimony shows that it is 'reasonably necessary to cure or relieve the effects of the injury.'" Martin, 461 N.J. Super. at 338 (quoting Hanrahan v. Twp. of Sparta, 284 N.J. Super. 327, 336 (App. Div. 1995)).

What is reasonable and necessary does not depend on a petitioner's "desires or beliefs as to what treatment or service will be most beneficial." Hager v. M&K Constr., 246 N.J. 1, 24 (2021). A petitioner must show the treatment would "probably relieve petitioner's symptoms and thereby improve [her] ability to function." Hanrahan, 284 N.J. Super. at 336.

Here, Martone had extensive treatment and a total of six right knee procedures which have been ineffective. Martone has been examined by over sixteen medical professionals, including treatments from multiple psychiatrists and pain specialists; the record reflects many agree Martone suffers from a dependency on opioids. Martone's expert, Dr. Post, in accord with other doctors, noted her pain appears to be out of proportion to a typical patient, thereby complicating an ability to properly assess if her pain can be alleviated.

Martone contends the WCJ erred by according greater weight to the testimony of Dr. Sidor than the testimony of Dr. Post. However, "[c]ompensation judges have 'expertise with respect to weighing the testimony of competing medical experts.'" Martin, 461 N.J. Super. at 337 (quoting Ramos, 154 N.J. at 598). A "judge of compensation 'is not bound by the conclusional opinions of any one or more, or all, of the medical experts.'" Kaneh v. Sunshine Biscuits, 321 N.J. Super. 507, 511 (App. Div. 1999) (quoting Perez v. Capitol Ornamental, Concrete Specialties, Inc., 288 N.J. Super. 359, 367 (App. Div. 1996)). "That [the judge] gave more weight to the opinion of one physician as opposed to the other provides no reason to reverse th[e] judgment." Martin, 461 N.J. Super. at 337 (alterations in original) (quoting Bellino v. Verizon Wireless, 435 N.J. Super. 85, 95 (App. Div. 2014)).

Martone argues the JWC failed to articulate his reasons for crediting one doctor's testimony over another. However, the judge comprehensively reviewed the medical records in evidence and considered the experts' testimony after having the opportunity to assess their credibility. The JWC concluded Martone suffers from arthrofibrosis, a condition diagnosed by all three doctors. That condition made any further surgery challenging, both in terms of its potential success and in Martone's recovery without additional scarring that would further

A-2739-19

adversely impact her mobility. The JWC's factual findings and legal determinations are amply supported by the record. R. 2:11-3(e)(1)(D).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11