682 A.2d 720

CYNTHIA ECKERT, PLAINTIFF–APPELLANT, v. RUMSEY PARK
ASSOCIATES, AND AFFILIATED MANAGEMENT, INC.,
DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 11, 1996—Decided September 25, 1996.

Before Judges SHEBELL, BAIME and BRAITHWAITE.

*Robert E. Levy* argued the cause for appellant (*Scarinci & Hollenbeck*, attorneys; *Mr. Levy*, of counsel and on the brief; *Alicia M. Morejon*, on the brief).

*Robert A. Morley* argued the cause for respondent (*Mauro C. Casci*, attorney; *Eli L. Eytan*, of counsel and on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

In this appeal, from what plaintiff contends is an inadequate jury verdict, the critical issue is whether the trial judge committed reversible error by not allowing the jury to have, either on plaintiff's direct case or in rebuttal to defense psychiatric testimony, the *de bene esse* deposition of a licensed psychologist who treated plaintiff. Plaintiff claims that, contrary to the trial court's ruling, the psychologist did state within the required degree of reliability that plaintiff's psychological disorders were caused by her falls. We agree and reverse and remand.

Plaintiff's action sought damages for injuries she suffered from two falls on the steps of defendant's apartment complex. A five day trial was held before a jury at the conclusion of which the jury found in favor of plaintiff, but awarded her only $7000 in damages. Plaintiff moved for a new trial, or in the alternative, additur. Her motion was denied and she filed this appeal.

Suffice it to say that following the two falls plaintiff had extensive osteopathic and orthopedic care, including physical therapy, without substantial relief from the injuries suffered to her left side, neck and arm. Plaintiff then began seeing a psychologist, Dr. Inge Stafford, and was prescribed anti-depressants. Two weeks prior to trial, plaintiff was admitted to the mental health unit of Mountainside Hospital because of anxiety attacks and depression. At the time of trial, plaintiff had been classified as permanently disabled and was receiving Social Security disability benefits.

Plaintiff's medical experts described her disability as permanent. However, the defense experts described plaintiff's prognosis as excellent because they found no objective evidence of injury. The defense contended that plaintiff was employable, and was suffering only from a low-grade form of rheumatoid arthritis entirely unrelated to the falls.

A defense psychiatrist testified plaintiff was suffering from three conditions: somatoform disorder, the presentation of physical symptoms which are not supported by diagnostic testing; histrionic personality disorder, where the individual presents symptoms in a highly theatrical manner; and chronic depression. He opined that plaintiff was able to move both arms and that her physical complaints were not supported by the medical records.

In her video-taped deposition, Dr. Stafford testified that plaintiff was suffering from panic disorder with agoraphobia and also from a major clinical depression. With respect to the depression, Stafford concluded that it was the result of a "single episode." She also testified that three "stressors"—significant points

of pressure or trauma—contributed to plaintiff's emotional state. These were: the falls, which resulted in the chronic pain; plaintiff's inability to work; and her financial hardship.

Plaintiff's counsel then undertook the following questioning of Dr. Stafford:

As a psychologist, would you be able to state definitively what caused Miss Eckert's current psychological state?

A. No, I couldn't.

Q. And why not?

A. Because we really don't talk about causation when we're talking about specifically anxiety disorders or, for that matter, most psychological or psychiatric illness. We can talk about predisposing factors.

. . . .

Q. Did Miss Eckert exhibit any predisposing factors for her current condition?

A. I specifically questioned her as to a history of anxiety disorders in her family and/or a history of major depression in her family.

And she denied that that was the case.

. . . .

Q. And so to answer my question, did you find any predisposing factors from your interview with Miss Eckert?

A. None that I could identify.

Q. Okay.

Other than—are there other types of factors besides predisposing factors?

A. We can also talk of precipitating factors.

And these are, let's say, triggers or immediately precede the onset of symptoms.

. . . .

Q. Would a fall and resultant injury classify as a precipitating factor in Miss Eckert's case?

A. Yes, it would.

Q. What about financial hardship that may have resulted from an inability to work, would that classify as a precipitating factor in Miss Eckert's case?

A. Yes, it would.

Q. Are you then able to say that it's more probable than not that her fall and injury and resultant economic hardship has caused her current psychological state?

A. Again, I can't talk about causation. But I can—I certainly would say that there is a strong relationship and connection.

At the start of the trial, in granting defendants' motion to preclude Dr. Stafford's deposition from being presented as part of plaintiff's case-in-chief, the trial court reasoned that:

the standards set forth by the cases are that the standard has to be that it is based upon a reasonable degree of medical certainty and/or probability, in this particular circumstance, that Dr. Stafford takes the position that she can't talk about causation. Causation isn't in her vocabulary, and therefore, she can't say whether this condition was caused by the fall or not caused by the fall.

. . . .

What I have before me is Dr. Stafford, apparently based on her deposition, is taking the position that she is not able, and is unwilling to assess reasonable medical probabilities to this condition.

Plaintiff later requested that she be allowed to rebut the defense psychiatrist's testimony with Dr. Stafford's deposition. The trial judge initially withheld his ruling, and at the close of defendants' case, plaintiff again sought to introduce Dr. Stafford's videotaped deposition to rebut the defense testimony. Plaintiff's counsel noted that Dr. Stafford refused to appear in court. The judge ruled that while plaintiff could not use the deposition for expert testimony, portions could be used as factual testimony. After a recess, plaintiff's counsel announced that she had decided not to read the small portion of the deposition which the judge would allow because she saw no benefit in doing so.

The parties had agreed that the video-taped deposition of Dr. Stafford could be used in place of her in-court testimony, if her testimony was otherwise admissible. There is no dispute that Dr. Stafford was qualified as an expert. What is in dispute is the sufficiency of the psychologist's opinion with respect to causation.

■ In New Jersey, with regard to causation, it has been held "that medical-opinion testimony must be couched in terms of reasonable medical probability; opinions as to possibility are inadmissible." *Johnesee v. Stop & Shop Companies, Inc.,* 174 *N.J.Super.* 426, 431, 416 *A.2d* 956 (App.Div.1980). Thus, generally the foundation required for a medical expert witness's opinion as to the cause of the patient's injuries is that the causal connection

rises to the level of a reasonable medical probability. *Bondi v. Pole*, 246 *N.J.Super.* 236, 240, 587 *A*.2d 285 (App.Div.1991). Failure to provide such a causal connection can lead to the conclusion that the expert's statement is nothing more than a "net opinion." *Buckelew v. Grossbard*, 87 *N.J.* 512, 524, 435 *A*.2d 1150 (1981).

In *Aspiazu v. Orgera*, 205 *Conn.* 623, 535 *A*.2d 338 (1987), a worker brought a personal injury action against a co-worker, and the issue on appeal was whether a treating psychiatrist's written report concerning the plaintiff's condition should have been excluded because it failed to establish causation to the degree of certainty legally required. *Id.* 535 *A*.2d at 342. The Supreme Court of Connecticut noted that the problem with the report was that it made "no statement expressly concluding that the alleged assault was responsible for the plaintiff's treatment for mental distress." *Ibid.* However, the court held that it was not necessary for the expert to use the " 'talismanic' " or " 'magical words represented by the phrase "reasonable degree of medical certainty." ' " *Ibid.* (quotation-cite omitted). Rather, what was needed was for the trial court to be persuaded that "the doctor was reasonably confident of the relationship between the plaintiff's injury and his psychiatric diagnosis and treatment." *Id.* at 343.

The Connecticut court reasoned that the report "could reasonably have been interpreted by the jury ... to meet the acceptable standard of reliability ..." because it "characterized the plaintiff's condition as '[p]ost-traumatic neurosis' [and the] jury could reasonably have found that the trauma referred to [was] the alleged assault," which plaintiff on direct examination made clear was the reason he sought psychiatric help. *Ibid.* The court concluded: "A fair reading of the report as a whole makes it clear that the alleged assault was the precipitating event that created the condition for which [the psychiatrist] treated the plaintiff...." *Ibid.*

In this case, plaintiff made it clear in her testimony that the reason she sought the aid of a psychologist was as a consequence of the injuries and hardship she suffered from her falls. Dr. Stafford's deposition demonstrates that the two falls and conse-

quent hardships suffered by plaintiff were the precipitating events leading to plaintiff seeking treatment. Plaintiff's psychologist noted that plaintiff was suffering from a major depression, "single episode," because it appeared that this was the first time that she was suffering from depression. She added that plaintiff had no "predisposing factors" for depression, that the falls and injuries were a "precipitating factor" with respect to plaintiff's condition, and that there was a "strong relationship and connection" between plaintiff's falls and injuries and her psychological state.

In *Matott v. Ward*, 48 *N.Y.*2d 455, 423 *N.Y.S.*2d 645, 399 *N.E.*2d 532 (1979), the New York Court of Appeals observed that the causation requirement "is not to be satisfied by a single verbal straightjacket alone, but, rather, by any formulation from which it can be said that the witness' 'whole opinion' reflects an acceptable level of certainty." *Id.* 423 *N.Y.S.*2d at 647, 399 *N.E.*2d at 534 (quotation-cite omitted). The court further noted that this "need for flexibility" stems from the fact that "[t]raining in the inexact and continually expanding science of medical investigation implants in its initiates a reluctance to quantify their judgments as to cause and effect." *Ibid.* The court aptly stated it must take into account the fact that because the cause and effect relationship, by its very nature, may not be established with scientific certainty, the reservations expressed by the doctor "can be seen as candid indications of the limitations inherent in medical opinion and, as such, a useful revelation to the jury in reaching its own conclusion as to the merits of the parties opposing contentions on causation...." *Id.* 423 *N.Y.S.*2d at 648–49, 399 *N.E.*2d at 536.

█ It was error to exclude the testimony of Dr. Stafford for lack of a "correct" response on causation. This error was "clearly capable of producing an unjust result." *R.* 2:10–2. Not only was the psychologist's testimony an integral part of plaintiff's affirmative case, but because the deposition testimony was excluded the defense psychiatrist's testimony went before the jury unchallenged. The jury heard only that plaintiff was suffering from a somatoform disorder, in which her physical symptoms were not

supported by objective testing, and a histrionic personality disorder, whereby her symptoms were presented in a highly theatrical manner. Thus, the jury was led to conclude that plaintiff was either making up or exaggerating her complaints. Dr. Stafford's deposition might well have persuaded the jury that plaintiff's complaints and disability had a valid basis and were caused by the trauma of the falls and their aftermath.

Reversed and remanded for a new trial as to damages only.