729 A.2d 501 (1999)
Rugie KANEH, Petitioner-Respondent,
v.
SUNSHINE BISCUITS, Respondent-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued April 27, 1999.
Decided June 1, 1999.
*502 Joseph V. Wallace, Florham Park, for respondent-appellant (Hack, Piro, O'Day, Merklinger, Wallace & McKenna, attorneys; Mr. Wallace, of counsel and on the brief).
Kathryn Isaacs Rea, Princeton, for petitioner-respondent (Dean Anglin, attorney; Ms. Rea, on the brief).
Before Judges MUIR, Jr., and KEEFE.
The opinion of the court was delivered by KEEFE, J.A.D.
In this workers' compensation case, respondent Sunshine Biscuits appeals from a final judgment awarding petitioner Rugie Kaneh partial total disability benefits in the amount of $99,540.
The workers' compensation judge found that petitioner suffered from orthopedic, neurologic, and psychiatric disabilities in the form of twenty-five percent of partial total for the right shoulder, five percent of partial total for the left shoulder, fifteen percent of partial total for the cervical area, and seven and one-half percent of partial total for the adjustment disorder and depression stemming from the aforesaid injuries. The judge further found that these injuries resulted from the repetitive movements required by petitioner's position as a cookie packer on a "high-speed cookie conveyor" production line where petitioner was required to "raise her arms above her head, rotate her body to the left, and dump the cookies into a hopper...." Petitioner worked on this line for eight hours per day with two short lunch breaks and "would repeat the described activity ten to fifteen times within three to five minutes to keep up with the speed of the line...." According to the judge's findings, petitioner was engaged in this type of activity on February 11, 1993, when, "as she was reaching out to dump the cookies in the hopper, she felt a sharp pain in her right shoulder and her right arm became numb." Concluding from the evidence that all of the above described injuries stemmed from the same occupational exposure within the meaning of N.J.S.A. 34:15-31, the judge aggregated the weeks of compensation resulting from these disabilities and entered an award for 315 weeks of compensation at $316 per week.
Following the entry of judgment, respondent filed a motion for a new trial or, in the alternative, to reopen the record. The judge denied the motion in its entirety. This appeal followed in which respondent raises the following issues:
POINT ITHE FINDING BY THE COMPENSATION JUDGE THAT PETITIONER SUFFERS FROM A SINGLE ORTHOPEDIC OCCUPATIONAL DISEASE AS THE RESULT OF HER EMPLOYMENT MUST BE REVERSED AS THERE IS NO CREDIBLE EVIDENCE TO SUPPORT IT.
POINT IITHE DENIAL BY THE COMPENSATION JUDGE OF RESPONDENT'S MOTION FOR A NEW TRIAL OR TO REOPEN THE RECORD TO PRODUCE CRITICAL EVIDENCE WAS AN ABUSE OF DISCRETION.
We find no error and affirm for the reasons stated herein.

I.
In respondent's first point heading, it presents several interrelated issues. We first address respondent's criticism of the *503 trial judge's decision to accept the opinions of petitioner's medical experts over those of its own experts.
Our standard of review requires that we defer to the trial judge's findings as to credibility. Further, we are appropriately required to defer to the judge of compensation's expertise in analyzing medical testimony and abide by the long-standing principle that a "judge of compensation is not bound by the conclusional opinions of any one or more, or all of the medical experts.'" Perez v. Capitol Ornamental, Concrete Specialties, Inc., 288 N.J.Super. 359, 367, 672 A.2d 719 (App.Div.1996) (quoting Lightner v. Cohn, 76 N.J.Super. 461, 465, 184 A.2d 878 (App.Div.), certif. denied, 38 N.J. 611, 186 A.2d 308 (1962)). In this case, the trial judge found the petitioner to be "very credible" with respect to "the nature of her work and the result of her disabilities." He also found that her testimony concerning the effect the injuries had on her working ability was corroborated by the medical findings of her experts, Dr. Ruderman and Dr. Rubin. As to these experts, the judge found them to be "more credible and more attuned to the medical treatment and complaints of the petitioner than that presented by Dr. Rossi and Dr. Eisenberg for the respondent." Further, the judge gave reasons for that conclusion. Contrary to respondent's contention in its brief, we find no violation of Lewicki v. New Jersey Art Foundry, 88 N.J. 75, 89-90, 438 A.2d 544 (1981), Allen v. Ebon Servs. Int'l, Inc., 237 N.J.Super. 132, 135, 567 A.2d 228 (App. Div.1989), and Lister v. J.B. Eurell Co., 234 N.J.Super. 64, 73, 560 A.2d 89 (App. Div.1989). The trial judge gave sufficient reasons for his findings to enable appellate review. We find no reason to disturb those findings.
Respondent contends, alternatively, that the judge erred as a matter of law in accepting the testimony of petitioner's experts over that of its own experts because petitioner's experts' reports violated the principle of law stated in Allen cautioning workers' compensation judges against relying on stale medical reports. See also Perez v. Pantasote, Inc., 95 N.J. 105, 119, 469 A.2d 22 (1984). This objection, however, was not raised at the time of trial. Issues not raised in the trial court are deemed waived for appellate purposes unless they involve matters of great public importance. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). In any event, respondent fails to point to anything in the judge's decision indicating that the judge was unaware of the basic proposition that "[a]n award of compensation for partial permanent disability must be based on the disability that exists at the time of the determination." Allen, supra, 237 N.J.Super. at 135, 567 A.2d 228.
Respondent next contends that the record unequivocally shows that petitioner's cervical disability, right shoulder disability, and left shoulder disability were all diagnosed on different dates, separated by months, and, in the case of the left shoulder disability, almost nineteen months after the February 11, 1993, event that prompted petitioner to leave work. Respondent argues that the record at the very least required the trial judge to find that the disabilities manifested themselves on three separate dates, rather than treating them as a single occupational disease resulting in an award of 315 weeks of compensation, equivalent to fifty-two and one-half percent of partial total disability.
We agree with respondent that the record shows that the three conditions were diagnosed on different dates, the diagnosis of the neck condition occurring in March 1993, the right shoulder in June 1993, and the left shoulder in September 1994. Respondent, however, fails to cite any cases supporting the proposition that the date of diagnosis of an injury determines the manifestation date for compensation rate-setting purposes. Indeed, manifestation can be determined either by diagnosis through medical examination, manifest loss of physical function, or incapacity *504 to work. Bond v. Rose Ribbon & Carbon Mfg. Co., 42 N.J. 308, 311, 200 A.2d 322 (1964). Thus, it appears to us that the question is whether the evidence supports the judge's finding that the three injuries manifested on or about February 11, 1993, the day on which petitioner demonstrated an incapacity to work at her job.
Given our standard of review, we are satisfied that the judge's finding concerning the relationship between petitioner's repetitive motion as a part of her work effort and the shoulder and neck disabilities is supported by sufficient credible evidence in the record. We are also satisfied that the judge's conclusion that the injuries manifested as of February 11, 1993, for compensation purposes is also supported by the evidence. Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965). With respect to the latter issue, it is important to note that petitioner complained of left arm pain to the company doctor on February 11, 1993. The company doctor's misdiagnosis of petitioner's condition as carpal tunnel syndrome should not be held against her. Importantly, the doctor related all of petitioner's symptoms to a "chronic progressive problem related to 8 years of work." The company doctor referred petitioner to Dr. Ani, a specialist for "probable surgery in future." Dr. Ani also had the initial impression that he was dealing with carpal tunnel syndrome until diagnostic tests indicated otherwise. Those tests revealed objective findings in the neck and right shoulder. Although petitioner had returned to work briefly between the diagnosis of the neck and right shoulder injuries, she was on light duty and was not engaged in any repetitive motion activities permitting attribution to work effort other than that which ended on February 11. Further, Dr. Ani noted in July 1993 that there was cervical radiculopathy to the left arm, as well as the right, but the right side was worse. Simply stated, it can reasonably be inferred from the record that the left-sided complaints were present from the beginning but were overshadowed by more acute problems that attracted the attention of Dr. Ani.
Respondent also claims that because this is an occupational disease case and the judge found several separate "diseases" for which separate percentages of disability were assigned, the judge was required to enter the awards separately pursuant to § 12.c of the Workers' Compensation Act, N.J.S.A. 34:15-1 to -128, and had he done so the proper award would have been $38, 649. Respondent thus maintains that the compensation court's conclusion that petitioner suffers from one occupational disease to the extent of fifty-two and one-half percent of partial total disability violates principles enunciated in Poswiatowski v. Standard Chlorine Chem. Co., 96 N.J. 321, 475 A.2d 1257 (1984), and Ventre v. CPC Int'l, 285 N.J.Super. 567, 667 A.2d 1083 (App.Div.1995).
Under the Workers' Compensation Act:
When a claim petition alleges more than one disability, the number of weeks in the award shall be determined and entered separately for each such disability and the number of weeks for each disability shall not be cumulative when entering an award.
[N.J.S.A. 34:15-12.c.]
Respondent concedes that the two principal cases interpreting this language, Poswiatowski and Ventre, do not specifically address occupational diseases. In Poswiatowski, the Court found that "separate injuries arising out of the same accident should be treated for purposes of compensation as they affect the worker: cumulative in impact, resulting in a single compensable disability within the meaning of N.J.S.A. 34:15-36." 96 N.J. at 323, 475 A.2d 1257 (emphasis added).
In its analysis of N.J.S.A. 34:15-12.c, as amended and effective January 1980, the Supreme Court found persuasive the Legislature's stated intent to "`put significantly more money into the hands of the more seriously injured workers.'" Id. at 329, 475 A.2d 1257 (citation omitted). The *505 Court explained that severely injured workers, such as petitioner Smith in that case, "who did not experience his injuries as separable complaints" (e.g., Smith's crushed arm later required skin grafts from his thigh and abdomen), would not be compensated at the increased rates if their multiple disabilities were entered separately. Ibid. Despite the fact that the disabilities from Smith's skin grafts did not occur at the same time that he crushed his arm, and were capable of separate evaluation, the Court noted, "It is [the injuries'] cumulative nature that has affected [Smith's] working ability and we believe the Legislature meant to compensate him in the same way." Ibid.
Thus, contrary to a literal application of § 12.c, the Court explained that
[c]ompensation judges must make findings that reflect an evaluation of the multiple injuries in determining whether there is a compensable disability; they must treat the individual as a whole in determining the statutory disability. The method is familiar: "It is not to be solved by adding up the fractional parts, but upon the basis of the percentage of total and permanent disability reasonably found to be produced by the several injuries considered collectively and with due regard to their cumulative effect."

[Id. at 330, 475 A.2d 1257 (emphasis added) (citation omitted).]
The Court then observed that
the better view is that the quoted sentence of N.J.S.A. 34:15-12(c) was intended to apply to cases in which separately compensable occupational disabilities are pleaded in a single claim petition, or cases of misjoinder of separate accidents, but not to separate injuries from a single accident that result in a compensable disability involving a material lessening of working ability or significant functional loss for the worker.
[Id. at 332, 475 A.2d 1257.]
At first blush, the immediately preceding passage would appear to apply to this case because it involves an occupational disease claim in which several disabilities were alleged. That is to say, to the extent that each of the orthopedic occupational "diseases" could be "separately compensable," the language of § 12.c instructs the compensation judge to determine and enter the awards separately for each disability.
The critical question then is whether the three occupationally-caused orthopedic disabilities found by the judge for which he was able to assign separate percentages of disability are "separately compensable" within the meaning of Poswiatowski. We hold that they are not and that the workers' compensation judge correctly concluded that petitioner should be compensated in this occupational disease case in the same way that a petitioner is compensated in a single traumatic injury case even though, as in Poswiatowski, the disabilities stemming from the traumatic event may be diagnosed at different times and may be capable of separate assessment.
It is necessary to analyze the Supreme Court's language in Poswiatowski in context rather than simply isolating the phrase "separately compensable occupational disabilities." Ibid. In discussing when the literal language of § 12.c applies, the Court identified both "separately compensable occupational disabilities pleaded in a single claim petition [and] cases of misjoinder of separate accidents Ibid. Because these two different types of cases were discussed as a group in the same thought, the Court obviously perceived that they shared an identity of principle requiring that they be treated the same. That unifying principle is best identified by discussing the misjoinder of claims problem stemming from separate traumatic events. It is generally acknowledged that where there is more than one traumatic event each of which results in injury and disability to a worker, each traumatic event should be the subject of a separate claim petition for which *506 § 12.c requires separate awards of disability, rather than cumulating the awards to achieve a higher rate of compensation. That is, the Legislature did not intend to benefit a worker who simply misjoins separate claims in one petition. Id. at 331, 475 A.2d 1257 (citing Fred H. Kumpf, "Occupational Disease Claims Under the Workers' Compensation Reforms," 12 Seton Hall L.Rev. 470, 483 (1982) (stating that "the new section 34:15-12(c) is concerned only with negating any advantage resulting from the misjoinder of more than one disability in a single claim petition.")).
Similarly, with respect to occupational diseases, at the time the reform legislation was under consideration there was concern in the industry over employers "confronted with an occupational disease claim that may be traceable to several periods of employment...." Poswiatowski, supra, 96 N.J. at 330, 475 A.2d 1257. As Judge Kumpf observed in his article, § 12.c was also intended to correct the problem of attorneys alleging all occupational disabilities in one claim petition irrespective of when the diseases manifested. Kumpf, supra, 12 Seton Hall L.Rev. at 482-83. Thus, "[u]nder the new Act the compensation rate for each of the disabilities, for example, pulmonary and loss of hearing, is to be determined by beginning at the first week in the schedule for each disability separately. The weeks should not be added together to determine the average rate over the number of weeks of the award." Ibid. Obviously, Judge Kumpf was addressing distinct disabilities manifesting at different times, otherwise he would not have mentioned the problem of averaging rates for the accumulated weeks of the award.[1] Because Judge Kumpf was assuming different dates of manifestation in his example, the two occupational disabilities were "separately compensable" in the context of the Court's discussion in Poswiatowski and, thus, could not be cumulated for compensation purposes. Thus, we interpret Poswiatowski to hold that § 12.c should be literally applied where there are separate traumatic events that cause separate injuries, or where there are claims for occupational exposure involving different disabilities that manifest at different times.
Where as here, however, the worker's injuries, though separately identifiable, manifested on the same date, the case becomes more like the single traumatic event case in which several injuries result. If the separate injuries, although diagnosed at different times, are all related to the occupational hazard that caused the worker to leave the employment on a given date, it is logical to conclude that those injuries result in one disability for compensation purposes, just as separate injuries resulting from one traumatic event are treated as one disability, regardless of whether the injuries for which compensation is owed were diagnosed on a date later than the date of the traumatic event. See Poswiatowski supra, 96 N.J. at 326-28, 475 A.2d 1257 (discussing petitioner Smith's injuries and the rationale for finding a single disability). We conclude, therefore, that the workers' compensation judge did not err in treating petitioner's several injuries as a single disability for compensation purposes.
Nor do we find any violation of the principles stated by this court in Ventre where we expressed our concern, in a single traumatic injury case, that the workers' compensation judge may not have given "sufficient consideration to the real possibility of overlap ... or to the need to ascertain the true cumulative extent of impairment resulting from the various injuries he found." 285 N.J.Super. at 571, 667 A.2d 1083.
The medical testimony in this case overwhelmingly demonstrates the interrelationship of the neck and shoulder injuries and, indeed, the problem of overlapping *507 disabilities. It was a subject that was recognized by Dr. Ruderman, who testified on behalf of petitioner. The doctor testified that if he simply added together the individual assessments he made of each area of injury, the addition would have yielded a cumulative disability of ninety percent. However, in recognition of the interrelationship of the injuries and the problem of overlap, he concluded that the cumulative impact of the injuries on petitioner as a whole more accurately reflected a permanent partial total disability of sixty-five percent. The trial judge in his opinion recognized Dr. Ruderman's testimony on this point. The judge found Dr. Ruderman's testimony to be credible but made an independent finding of disability, as was his prerogative. The judge's conclusion, amounting to essentially fifty-two and one-half percent of partial total disability, was substantially less than Dr. Ruderman's. We are satisfied that the judge was aware of the problem of overlapping disabilities due to the interrelationship of the neck and shoulders and that his ultimate award reflects that consideration.

II.
Respondent contends that the compensation judge erred when he denied respondent's motion for a new trial or to reopen the record to produce additional evidence concerning petitioner's work effort. We find no merit in the arguments advanced under this point requiring extensive discussion. R. 2:11-3(e)(1)(E). Suffice it to say that our review of the record satisfies us that the judge did not abuse his discretion in either respect.
Affirmed.
NOTES
[1] The date of manifestation of the occupational disease determines the rate of compensation. Falcon v. American Cyanamid, 221 N.J.Super. 252, 534 A.2d 403 (App.Div.1987).