NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1690-15T3

TERESA D'ANGELO,

 Petitioner-Respondent,

v.

ARCHDIOCESE OF NEWARK/CHRIST
THE KING PREPARATORY SCHOOL,

 Respondent-Appellant.
_______________________________

 Argued September 25, 2017 – Decided October 30, 2017

 Before Judges Sabatino and Rose.

 On appeal from the New Jersey Department of
 Labor and Workforce Development, Division of
 Workers' Compensation, Claim Petition No.
 2013-1923.

 Joseph V. Biancamano argued the cause for
 appellant (Biancamano & DiStefano, PC,
 attorneys; Mr. Biancamano, on the briefs).

 Teresa J. Gundersen argued the cause for
 respondent.

PER CURIAM
 Respondent Archdiocese of Newark/Christ the King Preparatory

School appeals from a November 17, 2015 order of the Division of

Workers' Compensation finding petitioner Teresa D'Angelo

permanently and totally disabled as a result of a compensable

injury, and awarding her counsel fees. Respondent contends the

decision of the Judge of Workers' Compensation is erroneous in

numerous aspects. We disagree, and affirm.

 I.

 Petitioner was employed by respondent as a school bus driver

when, on November 28, 2011, she sustained a gunshot wound to her

hip from a stray AK-47 bullet that entered the side of the vehicle.

The bullet lodged in petitioner's pelvis, and caused multiple

internal injuries. Petitioner underwent surgery and treatment for

her physical injuries, and suffered from post-traumatic stress

disorder ("PTSD").

 A seven-day trial was held before the compensation judge on

non-consecutive days from October 14, 2014, through July 14, 2015.

Having stipulated the incident was a compensable accident,

respondent's sole focus at trial was upon the nature and extent

of petitioner's disability. Petitioner testified and presented

testimony of two expert witnesses; her employer presented

competing testimony of two other expert witnesses.

 2 A-1690-15T3
 Petitioner testified over the course of three trial days.

She described her complaints and limitations at the time of her

testimony compared to her health prior to the incident. For

example, her energy level is reduced and her activities are

limited. Petitioner testified further she suffers from anxiety

attacks, fears being alone at night, and feels depressed.

 Petitioner acknowledged she had been involved in two motor

vehicle accidents prior to the incident. Although she did not

recall the injuries she sustained in the first accident in 1999,

petitioner testified she injured her cervical spine in the second

accident in 2007. She did not miss work while she was treating

for neck pain. Petitioner disclosed further she had treated with

a psychologist during the seven or eight years prior to the

accident for family issues, panic attacks, and difficulty

sleeping.

 Before petitioner presented the testimony of her medical

experts, respondent sought to introduce testimony regarding her

pre-existing medical condition to determine whether Second Injury

Fund1 participation was warranted. Although petitioner did not

1
 See N.J.S.A. 34:15-95; Sexton v. Cty. of Cumberland/Cumberland
Manor, 404 N.J. Super. 542, 555 (App. Div. 2009) ("allow[ing]
employers a credit if a work accident accelerates or aggravates a
preexisting condition, resulting in total and permanent
disability")(citing N.J.S.A. 34:15-95; N.J.S.A. 34:15-12(d)).

 3 A-1690-15T3
file a formal motion to quash the subpoenas, the compensation

judge disallowed the testimony, finding it was not probative of

the sole issue before the court, that is, "the nature and extent

of [p]etitioner's permanent disability as it relates to the

compensable accident." The compensation judge noted further that

a Second Injury Fund petition was not pending before the court.

 Both experts who testified on behalf of petitioner opined she

is totally and permanently disabled from the incident.

Petitioner's orthopedic expert, Dr. Cary Skolnick, evaluated her

on November 4, 2013, and opined the injuries to her pelvis, hips,

abdomen and spine all were related to the incident, rendering her

one hundred percent totally and permanently disabled.

 When asked about the term on cross-examination, Dr. Skolnick

defined the concept of reasonable degree of medical probability

as "[s]omething that is more probable than not." He was unable

to state what respondent identifies as the three major

classifications of workers' compensation disability, and could not

provide the legal definition of permanency. Respondent moved to

strike Dr. Skolnick's testimony as net opinion, and for failure

to comprehend the applicable legal terms. The compensation judge

reserved decision and instructed respondent to brief the issue as

 4 A-1690-15T3
part of its findings of fact and conclusions of law at the

completion of trial.2

 Dr. Peter Crain, a board-certified psychiatrist, testified

as petitioner's neurology expert. Dr. Crain evaluated petitioner

on December 18, 2013, and diagnosed her with lumbrosacral

plexopathy and PTSD. Dr. Crain opined petitioner's physical

symptoms were permanent, and ascribed a neurological disability

of twenty-five percent. Dr. Crain opined further petitioner's

PTSD was causally related to the incident and ascribed a

psychiatric disability of thirty-five percent. Although

petitioner informed Dr. Crain she had not had any panic attacks

prior to the incident, he acknowledged her prior records indicated

otherwise. Dr. Crain testified, however, that petitioner's prior

panic attacks and anxiety had completely dissipated prior to the

incident.

 On cross-examination, Dr. Crain defined the term reasonable

degree of medical probability as "that for more reasons than not

based upon the evidence available, this person has the condition

that I diagnosed based upon these facts that I base my opinion

2
 The compensation judge did not rule specifically on the motion
in her final decision. However, it is unclear from the record
whether respondent briefed the issue, inasmuch as its findings of
fact and conclusions of law were not included in its appendix on
appeal.

 5 A-1690-15T3
upon." Like Dr. Skolnick, he was unable to identify the three

types of disability set forth in the workers' compensation statute.

Respondent's motion to strike Dr. Crain's testimony, on the same

bases as its motion to strike Dr. Skolnick's testimony, was denied.

 Unlike petitioner's experts, both experts who testified on

behalf of respondent opined petitioner is not totally and

permanently disabled from the incident. Dr. Malcolm Coblentz, an

expert in general surgery, determined partial total disability of

twelve and one-half percent for petitioner's abdomen, left iliac

vein, and umbilical hernia; fifteen percent partial total

disability for her left hip and left iliac wing; ten percent for

her left leg; and no evidence of disability for her right pelvis.

 According to Dr. Coblentz, petitioner did not disclose to him

her prior motor vehicle accidents. As such, respondent moved to

dismiss the action based on petitioner's allegedly "fraudulent"

answers to Dr. Coblentz.3 The compensation judge denied the motion

and respondent's subsequent attempt to produce in evidence,

through Dr. Coblentz, petitioner's prior cervical MRI. The

3
 See N.J.S.A. 34:15-57.4(c)(1)(providing, "[i]f a person purposely
or knowingly makes, when making a claim for benefits pursuant to
[N.J.S.A.] 34:15-1 et seq., a false or misleading statement,
representation or submission concerning any fact which is material
to that claim for the purpose of obtaining the benefits, the
division may order the immediate termination or denial of benefits
with respect to that claim and a forfeiture of all rights of
compensation or payments sought with respect to the claim.").

 6 A-1690-15T3
compensation judge reasoned respondent had not moved to dismiss

petitioner's claim or suppress her defenses prior to trial and,

as such, waived its discovery demand.

 Dr. Erin Elmore, a board-certified neurologist and expert in

neuropsychiatry, diagnosed petitioner with a sciatic nerve injury

from the gunshot wound, and determined a partial total neurological

disability of seven and one-half percent. Dr. Elmore also

diagnosed petitioner with PTSD and recommended psychiatric

treatment. Having refused that treatment, Dr. Elmore estimated

petitioner's disability at five percent.

 In her comprehensive written decision, the compensation judge

found petitioner's testimony was "straightforward, to the best of

her ability and recollection, and very credible." The judge

detailed petitioner's testimony regarding the incident, treatment

and complaints, the latter of which the judge found "are of the

type one would expect given the nature and extent of her

significant injuries."

 In finding petitioner is totally and permanently disabled as

a result of the incident, the compensation judge observed "both

parties have significant findings of disability." The judge was

influenced particularly by Dr. Coblentz's concurrence with Dr.

Skolnick's findings, that is, the muscle petitioner injured

controls "'balance and keeping people upright'" and "a torn or

 7 A-1690-15T3
ripped muscle will heal but with a scar that can cause pain,

discomfort and spasm with certain motions." Thus, the compensation

judge found the objective medical findings consistent with

petitioner's subjective complaints of balance instability and

muscle fatigue. The judge found, nevertheless, Dr. Coblentz's

attempts to minimize petitioner's injuries as disingenuous.

 The compensation judge also determined the objective findings

of both neurologic experts, Dr. Crain and Dr. Elmore, "are

consistent with petitioner's complaints of a dropped foot that

causes her to fall." Further, the judge noted both neurologic

experts concurred that petitioner suffers from PTSD due to the

incident.

 In her written decision, the compensation judge addressed

respondent's motion to dismiss petitioner's claim for fraud for

failing to disclose her 2007 motor vehicle accident to the

respondent's evaluating physicians. In denying the motion, the

judge found petitioner's prior orthopedic and psychiatric history

had been disclosed to respondent during the course of discovery

as early as August 13, 2012. The judge also found petitioner's

cervical spine, injured in the 2007 motor vehicle accident, was

not injured in the underlying incident; reiterated a Second Injury

Fund application was not filed with the court; and considered

 8 A-1690-15T3
petitioner's testimony that her treatments for the 2007 motor

vehicle accident did not prevent her from working.

 In rendering her decision, the compensation judge emphasized

she had the opportunity to observe petitioner on three trial days,

hear her testimony, review the medical testimony and medical

records in evidence, all of which led her to conclude petitioner

is totally and permanently disabled as a result of the shooting

incident. The judge's ruling included an award of 450 weeks, and

also assessed against respondent an award of counsel fees in the

amount of $2,500 for defense of "various" motions made during

trial "based upon the history of the proceedings."

 On appeal, respondent argues, among other things: (1) there

is insufficient credible evidence to support the compensation

judge's finding that petitioner was permanently and totally

disabled based solely on the November 28, 2011 incident, and the

compensation judge violated its due process rights by excluding

evidence of petitioner's treatment for a prior motor vehicle

accident; (2) the testimony of petitioner's medical experts was

incompetent and should have been stricken from the record as net

opinion, for failure to define pertinent medical/legal criteria,

and for violating the requirements set forth in Allen v. Ebon

 9 A-1690-15T3
Servs. Int'l, Inc.4 ("Allen requirements"); and (3) the

compensation judge's imposition of counsel fees was unjustified.

Having considered these and respondent's other arguments, we

decline to set aside any of the judge's rulings.

 II.

 Our review of workers' compensation cases is "limited to

whether the findings made could have been reached on sufficient

credible evidence present in the record . . . with due regard also

to the agency's expertise." Hersh v. Cty. of Morris, 217 N.J.

236, 242 (2014) (alteration in original) (quoting Sager v. O.A.

Peterson Constr., Co., 182 N.J. 156, 164 (2004)); see also Renner

v. AT&T, 218 N.J. 435, 448 (2014). We may not substitute our own

factfinding for that of the judge of compensation. Lombardo v.

Revlon, Inc., 328 N.J. Super. 484, 488 (App. Div. 2000). We must

defer to the factual findings and legal determinations made by the

judge of compensation "considering the proofs as a whole, with due

regard to the opportunity of the one who heard the witnesses to

judge their credibility." Lindquist v. City of Jersey City Fire

Dep't, 175 N.J. 244, 262 (2003) (internal quotation marks and

citations omitted).

4
 237 N.J. Super. 132 (App. Div. 1989).

 10 A-1690-15T3
 Importantly, compensation judges possess "expertise with

respect to weighing the testimony of competing medical experts and

appraising the validity of [a petitioner's] compensation claim."

Ramos v. M & F Fashions, 154 N.J. 583, 598 (1998). In the end, a

judge of compensation has the discretion to accept or reject expert

testimony, in whole or in part. Kaneh v. Sunshine Biscuits, 321

N.J. Super. 507, 511 (App. Div. 1999); see also Kovach v. Gen.

Motors Corp., 151 N.J. Super. 546, 549 (App. Div. 1978) ("It must

be kept in mind that judges of compensation are regarded as

experts.").

 We will "appraise the record as if we were deciding the matter

at inception and make our own findings and conclusions" only if

the judge of compensation "went so wide of the mark that a mistake

must have been made[.]" Manzo v. Amalgamated Indus. Union Local

76B, 241 N.J. Super. 604, 609 (App. Div.), certif. denied, 122

N.J. 372 (1990) (citations omitted). However, we afford no

deference to a judge of compensation's interpretation of the law

and instead review legal questions de novo. Renner, supra, 218

N.J. at 448.

 Against this legal backdrop, and mindful of our standard of

review, we affirm substantially for the reasons expressed by the

compensation judge in her written decision of November 17, 2015.

There is more than sufficient proof in the record to sustain the

 11 A-1690-15T3
compensation judge's conclusion that petitioner is totally and

permanently disabled as a result of the incident. The objective

findings of both parties' experts corroborate petitioner's

subjective complaints, and amply support the judge's conclusions.

We add the following comments on the main points presented by

respondent.

 A.

 Contrary to respondent's contentions, the compensation judge

did not violate its due process rights by excluding evidence of

petitioner's 2007 motor vehicle accident. Our review of

evidentiary rulings by trial courts, including workers'

compensation courts, is limited. See Vitale v. Schering-Plough

Corp., 447 N.J. Super. 98, 122 (App. Div.), certif. granted, 228

N.J. 421, certif. denied, 228 N.J. 430 (2016). "The general rule

as to the admission or exclusion of evidence is that

'[c]onsiderable latitude is afforded a trial court in determining

whether to admit evidence, and that determination will be reversed

only if it constitutes an abuse of discretion.'" State v.

Kuropchak, 221 N.J. 368, 385 (2015) (citation omitted). "Under

that standard, an appellate court should not substitute its own

judgment for that of the trial court, unless 'the trial court's

ruling "was so wide of the mark that a manifest denial of justice

 12 A-1690-15T3
resulted."'" Ibid. (quoting State v. Marrero, 148 N.J. 469, 484

(1997)).

 Abiding by that standard of review, we agree with the

compensation judge that petitioner's injuries from her 2007 motor

vehicle accident were properly excluded at trial. As the judge

found in her written decision, neither party applied for Second

Injury Fund benefits pursuant to N.J.S.A. 34:15-95. Further,

there is no evidence in the record that petitioner's injuries from

her 2007 motor vehicle accident prevented her from working prior

to the 2011 incident. On the contrary, as the judge observed, the

injuries petitioner sustained in the 2007 motor vehicle accident

did not affect her ability to work or function normally. Moreover,

petitioner injured her cervical spine in the prior 2007 motor

vehicle accident whereas her lumbar spine -- and not her cervical

spine -- was injured in the instant incident. In sum, the

compensation judge properly excluded evidence of the 2007 motor

vehicle accident as irrelevant in the compensation trial.

 B.

 We next turn to respondent's claims that petitioner's expert

medical testimony should have been stricken as incompetent. We

"apply [a] deferential approach to a trial court's decision to

admit expert testimony, reviewing it against an abuse of discretion

 13 A-1690-15T3
standard." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344,

371 (2011).

 Initially, we find no merit to respondent's claims that Dr.

Skolnick and Dr. Crain rendered inadmissible net opinions. The

doctrine barring the admission at trial of net opinions is a

"corollary of [N.J.R.E. 703] . . . which forbids the admission

into evidence of an expert's conclusions that are not supported

by factual evidence or other data." Townsend v. Pierre, 221 N.J.

36, 53-54 (2015) (alterations in original) (quoting Polzo v. Cty.

of Essex, 196 N.J. 569, 583 (2008)). The net opinion principle

mandates experts "give the why and wherefore" supporting their

opinions, "rather than . . . mere conclusion[s]." Id. at 54

(quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J.

115, 144 (2013)). An expert's conclusion, therefore, must be

excluded "if it is based merely on unfounded speculation and

unquantified possibilities." Vuocolo v. Diamond Shamrock Chems.

Co., 240 N.J. Super. 289, 300 (App. Div.), certif. denied, 122

N.J. 333 (1990).

 However, "[t]he net opinion rule is not a standard of

perfection." Townsend, supra, 221 N.J. at 54. It does not require

experts organize or support their opinions in a specific manner

"that opposing counsel deems preferable." Ibid. Consequently,

"[a]n expert's proposed testimony should not be excluded merely

 14 A-1690-15T3
'because it fails to account for some particular condition or fact

which the adversary considers relevant.'" Ibid. (quoting Creanga

v. Jardal, 185 N.J. 345, 360 (2005)).

 As the compensation judge noted in her decision, "both [of

petitioner's] experts testified as to the factual basis for their

opinions and the causal relationship between the gunshot wound and

[p]etitioner's current complaints." Indeed, the judge's decision

is replete with references to testimony that supported each

expert's opinion. For example, Dr. Skolnick testified that his

opinion was based upon his physical examination of petitioner, her

testimony at trial, and his review of the voluminous medical

records. Dr. Crain's opinion was predicated upon his examination

of petitioner, which he testified to at length at trial utilizing

an anatomical model and the results of petitioners' CT scan. The

experts gave the "why and wherefore" of their opinions and, as

such, they were not "net."

 Secondly, we find no merit in respondent's argument that the

experts' failure to properly define the legal term, "reasonable

degree of medical probability or certainty," is fatal to their

respective testimony. We have defined "reasonable medical

certainty or probability" as "the general consensus of recognized

medical thought and opinion concerning the probabilities of

conditions in the future based on present conditions." Schrantz

 15 A-1690-15T3
v. Luancing, 218 N.J. Super. 434, 439 (Law Div. 1986) (citing

Boose v. Digate, 246 N.E.2d 50 (Ill. App. Ct. 1969)). If an expert

cannot demonstrate that he understands the essential meaning of

that phrase, his offered testimony "must be stricken because it

cannot be said that the opinions he gave were based on reasonable

medical probability." Ibid.

 We have observed, however, in Eckert v. Rumsey Park Assocs.,

294 N.J. Super. 46, 51 (App. Div. 1996), certif. denied, 147 N.J.

579 (1997) (quoting Aspiazu v. Orgera, 535 A.2d 338, 343 (Conn.

1987)), it is not necessary for a testifying expert to use the

"'talismanic' or 'magical words' represented by the phrase

'reasonable degree of medical certainty.'" Instead, to admit the

expert's testimony, a court only needs to be "persuaded that 'the

doctor was reasonably confident of the relationship between the

plaintiff's injury and [her] . . . diagnosis and treatment.'"

Ibid. It is therefore merely necessary for an expert to "convey[]"

the meaning of "reasonable degree of medical certainty" when

offering his opinion. State v. McNeil, 405 N.J. Super. 39, 50-51

(App. Div.), certif. denied, 199 N.J. 130 (2009) (citing Eckert,

supra, 294 N.J. Super. at 51).

 We discern no reversible error, nor any manifest injustice,

in the trial court's allowance of petitioner's experts' testimony,

given their respective phrasing of the concept. Although the

 16 A-1690-15T3
compensation judge ruled during trial5 that respondent's

objections would bear upon the weight of the evidence, the concept

does not require particular "talismanic" or "magical words" that

must be invoked. Dr. Skolnick and Dr. Crain expressed their

respective opinions in terms of medical "probabilities" instead

of impermissible "possibilities." We are thus satisfied that

neither expert misstated the basic concept.

 Nor are we persuaded by respondent's similar argument that

both experts' opinions were inadmissible because neither Dr.

Skolnick nor Dr. Crain could properly define in legal terms

"permanent disability," or identify the three types of disability

set forth in N.J.S.A. 34:15-36. Notably, respondent has not cited

any authority requiring an expert to define statutory terms or

classifications. Having determined that Dr. Skolnick and Dr.

Crain were qualified to testify in their respective areas of

expertise, the compensation judge properly accepted their

opinions, while rejecting the opinions of the respondent's

experts. See Kaneh, supra, 321 N.J. Super. at 511. It was,

therefore, within the compensation judge's discretion to impart

5
 As noted above, it is unclear whether respondent raised this
objection in its post-trial submission to the court, inasmuch as
that submission was not included in its appellate appendix.

 17 A-1690-15T3
more weight to petitioner's experts, despite their inability on

the witness stand to recite on demand certain statutory terms.

 Turning to respondent's contention that petitioner's experts

failed to satisfy the Allen requirements, we are again unpersuaded.

In Allen, supra, we reversed a workers' compensation award of

permanent partial disability, and remanded for "redetermination

of permanent disability after reexaminations have been conducted."

237 N.J. Super. at 133, 136. There, the compensation judge erred

by failing to set forth the specific findings required under

N.J.S.A. 34:15-36 and Perez v. Pantasote, Inc., 95 N.J. 105 (1984).

Id. at 135. The compensation judge in Allen stated merely the

petitioner had "objective signs of substantial injury[.]" Ibid.

Instead, Perez, supra, requires the petitioner make "a

satisfactory showing of demonstrable objective medical evidence

of a functional restriction of the body, its members or organs."

95 N.J. at 116. We, therefore, held a mere conclusory statement

that petitioner satisfied those requirements is insufficient

pursuant to N.J.S.A. 34:15-36.

 The present case, however, differs significantly from Allen.

In the compensation judge's seven-page written opinion, she set

forth specifically the objective medical evidence upon which she

based her decision, noted her credibility findings, discussed

petitioner's various medical issues and related explanations, and

 18 A-1690-15T3
reconciled those findings with the underlying law. In sum, the

compensation judge's opinion far exceeds the mere conclusory

statement that the petitioner in Allen had "objective signs of

substantial injury" which warranted reversal.

 Furthermore, as respondent contends, in Allen we also

reversed the award because both treating physicians had evaluated

the petitioner thirty-five months before the disability

determination was made, and twenty-six months before the

petitioner testified. "An award of compensation for partial

permanent disability must be based on the disability that exists

at the time of the determination." Allen, supra, 237 N.J. Super.

at 135 (citations omitted). We decided a gap in time of thirty-

five months did not satisfy that requirement because "'the validity

of a medical finding of a permanent injury may decrease with the

passage of time." Id. at 136 (quoting Perez, supra, 95 N.J. at

119).

 The timing of the expert evaluations in the present case is

distinguishable from Allen. Dr. Skolnick examined petitioner

approximately two years after the incident, one year after her

discharge from physical treatment, and seven months after the date

of total disability. Dr. Crain examined petitioner approximately

two years after the incident, thirteen months after her discharge

from physical treatment, nine months after her last counselling

 19 A-1690-15T3
session, and eight months after the date of total disability. As

we observed in Allen: "'the Legislature . . . did not intend that

awards routinely be made on the basis of medical examinations

performed shortly after the accidents and well before the

hearings[.]'" Allen, supra, 237 N.J. Super. at 136 (quoting Perez,

supra, 95 N.J. at 119). Significantly, here, two years had

transpired between the incident and the experts' respective

examinations, distinguishing this case from Allen, where the

accident was much more recent and the evaluation occurred before

the petitioner had time to improve.

 C.

 Lastly, we address respondent's argument that the

compensation judge lacked a legal basis to impose counsel fees for

filing a motion to dismiss for fraud pursuant to N.J.S.A. 34:15-

57.4. Ordinarily, trial courts, including workers' compensation

courts, possess wide discretion in ruling on counsel fee

applications, and we afford substantial deference to those rulings

on appeal. See Sroczynski v. Milek, 197 N.J. 36, 45-46 (2008);

see also Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444

(2001); Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386

(2009).

 However, appellate courts will provide relief from such

rulings in instances where the trial court has misapplied the law

 20 A-1690-15T3
or relied upon impermissible grounds. See, e.g., Rendine v.

Pantzer, 141 N.J. 292, 316-17 (1995) (recognizing the discretion

commonly exercised by trial judges in deciding counsel fee

applications); Walker v. Giuffre, 209 N.J. 124, 148 (2012) (holding

that a trial court's failure to comply with the methodology

prescribed by Rendine constitutes an abuse of discretion).

 Pursuant to N.J.S.A. 34:15-64, a judge of compensation "may

allow to the party in whose favor judgment is entered . . . a

reasonable attorney fee[.]" N.J.S.A. 34:15-64(a). Moreover, by

analogy, a Superior Court judge has "the inherent authority, if

not the obligation, to control the filing of frivolous motions and

to curtail "'harassing and vexatious litigation.'" Zehl v. City

of Elizabeth Bd. of Educ., 426 N.J. Super. 129, 139 (App. Div.

2012) (quoting Rosenblum v. Borough of Closter, 333 N.J. Super.

385, 387 (App. Div. 2000)).

 In her written decision, the compensation judge awarded

petitioner a fee for "defense of the various Motions made during

the pendency of the trial . . . based upon the history of the

proceedings." Because judges of compensation are afforded

substantial deference in assessing counsel fees, we are not

convinced the compensation judge here abused her discretion. See

Sroczynski, supra, 197 N.J. at 45-46. The compensation judge

presided over the lengthy trial, and addressed various motions

 21 A-1690-15T3
raised by respondent throughout. Respondent, in solely addressing

the motion to dismiss for fraud, while the judge assessed fee was

for "various" motions, does not explain how this fee was an abuse

of discretion, beyond claiming that it was "vindictive." Even if

the motions were not frivolous, the compensation judge had

discretion pursuant to N.J.S.A. 34:15-64(a) to award reasonable

counsel fees. We see no reason to disturb this ruling.

 Respondent's remaining arguments, to the extent we have not

specifically addressed them, lack sufficient merit to warrant

discussion in a written opinion. See R. 2:11-3(e)(1)(D) and (E).6

 Affirmed.

6
 Because we denied respondent's motion to amend its notice of
appeal regarding its claim that the compensation judge erred in
granting petitioner's motion to enforce the order of total
disability, this argument is improperly before us.

 22 A-1690-15T3