**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2929-17T2

IN THE MATTER OF THE
CIVIL COMMITMENT OF R.V.,

_____

Submitted February 14, 2019 – Decided May 2, 2019

Before Judges Simonelli and O'Connor.

On appeal from Superior Court of New Jersey, Law Division, Union County, Docket No. 20018.

Joseph E. Krakora, Public Defender, attorney for appellant R.V. (Christina Lewis, Assistant Deputy Public Defender, of counsel; Alexandria S. Correa, Assistant Deputy Public Defender, of counsel and on the briefs).

Robert E. Barry, Union County Counsel, attorney for respondent County of Union (Kevin G. Campbell, Assistant County Counsel, on the brief).

PER CURIAM

R.V. appeals from a February 22, 2018 order that continued his involuntary commitment to Trinitas Regional Medical Center. R.V. is no longer involuntarily

committed,[1] but the matter is not moot because the February 22, 2018 order may be considered in a future commitment hearing, which implicates R.V.'s constitutional liberty. See In re Commitment of T.J., 401 N.J. Super. 111, 118 (App. Div. 2008). Further, R.V. is liable for the cost of the confinement that ensued as a result of the February 22, 2018 order. See N.J.S.A. 30:4-60(c)(1). If R.V. should not have been confined, he will be entitled to a credit. See In In re Commitment of B.L., 346 N.J. Super. 285, 292 (App. Div. 2002).

After reviewing the record and applicable legal principles, we reverse.

I

The salient facts are these. On February 12, 2018, the court entered a temporary order for R.V.'s involuntary commitment for inpatient treatment pursuant to N.J.S.A. 30:4-27.2(m). A hearing to review his continued eligibility for involuntary commitment was held on February 22, 2018. At that hearing two witnesses testified, M. Awais Sethi, M.D., and R.V.'s mother. Their pertinent testimony was as follows.

Dr. Sethi, who was not qualified as an expert witness, testified R.V. suffers from schizoaffective disorder, bipolar type, for which he had been previously hospitalized before his commitment just a few weeks before. During that prior

---

[1] The record does not indicate the date R.V. was discharged.

A-2929-17T2

hospitalization, he received medication and was discharged. Then, approximately one year before he was involuntarily committed in February 2018, R.V. stopped taking his medication and became agitated and aggressive, "destructive of property" in his home, and "very religiously preoccupied."

Sethi observed R.V. after he was hospitalized on February 12, 2018, and found R.V. to be "very easily agitated" and "religiously preoccupied." The doctor stated he "couldn't really follow [R.V.'s] conversation[s] because [R.V.] would say things that didn't make much sense of a religious nature." While hospitalized, R.V. took medication for a short period and his condition improved, but he then refused to take medication and the noted improvement "vanished."

The day before Sethi testified, he saw R.V., who at that time claimed he was talking to God. The doctor testified, "[h]e did not seem to be in his right mind, for a lack of a better way of putting it. Very religiously preoccupied still. Irrational. And I don't think he's in the state of mind where he can fend for himself out in the community." The doctor acknowledged that he had never seen R.V. harm another or damage property.

The doctor further testified R.V. is a "possible" danger to himself or to others, an opinion the doctor based upon R.V.'s state of mind, events that occurred before R.V.'s hospitalization, his history of mental illness, and the treatment he has

A-2929-17T2

received, as set forth in hospital records. The doctor recommended that the court continue R.V.'s commitment for another four weeks, to permit R.V. to be treated with medication and become well enough to be discharged.

R.V.'s mother testified she had not seen R.V. engage in aggressive behavior when he stopped taking his medication, but he did become preoccupied with religion, did not sleep or eat, and talked endlessly. She stated R.V. is "fine" when he takes his medication and could return to her home if he resumed taking it.

After the mother testified, Sethi was recalled as a witness. He indicated he heard the mother testify and he stated her testimony supported his opinion R.V. was not able to function safely in the community, because "he just reads the Bible and walks around, doesn't eat, doesn't drink." Sethi repeated that if R.V. took his medication, he could be discharged from the hospital.

At the conclusion of Sethi's testimony, the court did not make any findings of fact or conclusions of law, as required by Rule 1:7-4(a). The court merely ordered that R.V.'s involuntary commitment continue another two weeks, and scheduled a review hearing for March 8, 2018. The record does not reveal what occurred at the March 8, 2018 hearing. In his brief, R.V. mentions he was transferred to a long-term locked institution and subsequently discharged, but he does not state when such

4

admission occurred and if it was related to the involuntary commitment that commenced in February 2018.

II

On appeal, R.V. asserts an array of arguments. They include that Sethi was not qualified as an expert witness during the February 22, 2018 hearing, and that his opinion R.V. was a danger to himself and others was based upon only a possibility, an opinion that falls far short of the requirement the State prove by clear and convincing evidence a party has a mental illness and that it causes him to be dangerous to themselves, others, or property.

N.J.S.A. 30:4-27.15(a) authorizes a court to continue an individual's involuntary commitment past a temporary commitment order as long as "the court finds by clear and convincing evidence that the patient needs continued involuntary commitment to treatment . . . ." The statute defines "in need of involuntary commitment to treatment" as "an adult with mental illness, whose mental illness causes the person to be dangerous to self or dangerous to others or property and who is unwilling to accept appropriate treatment voluntarily after it has been offered . . . ." N.J.S.A. 30:4-27.2(m).

"Dangerous to self" is defined as:

> [B]y reason of mental illness the person has threatened or attempted suicide or serious bodily harm, or has

behaved in such a manner as to indicate that the person is unable to satisfy his need for nourishment, essential medical care or shelter, so that it is probable that substantial bodily injury, serious physical harm or death will result within the reasonably foreseeable future; however, no person shall be deemed to be unable to satisfy his need for nourishment, essential medical care or shelter if he is able to satisfy such needs with the supervision and assistance of others who are willing and available. This determination shall take into account a person's history, recent behavior and any recent act, threat or serious psychiatric deterioration.

[N.J.S.A. 30:4-27.2(h).]

We turn to R.V.'s contention that the failure of Sethi to be qualified as an expert witness warrants the reversal of the February 22, 2018 order. N.J.R.E. 702 states that:

[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

This rule embodies the requirement that a witness who provides specialized knowledge on a subject matter beyond the ken of the fact-finder must have sufficient expertise to offer the intended testimony. State v. Kelly, 97 N.J. 178, 208 (1984). Before such witness may testify, the court must be satisfied that a witness has the expertise to testify about such specialized knowledge. See State v. Jenewicz, 193

N.J. 440, 455 (2008). Further, when seeking a final order for involuntary commitment, the State's application must be supported by the oral testimony of a psychiatrist. R. 4:74-7(e).

Here, Sethi's qualifications were not placed on the record, and the court neither found nor did R.V. stipulate the doctor was qualified to testify as an expert witness in this matter. The record does not even reveal whether Sethi was a psychiatrist. Thus, Sethi was not qualified to render any of the medical expert opinions he provided during the hearing. We recognize that court and counsel may have participated in other commitment hearings that day, and Sethi may have been qualified as an expert witness at a previous hearing. Nevertheless, to involuntarily commit a party, the State must prove such party has a mental illness that makes him dangerous to himself, others, or property, and that requires the testimony of an expert who is properly qualified.

In addition, Sethi testified it was only possible R.V.'s mental illness made him a danger to himself or others. That opinion did not establish by clear and convincing evidence R.V. needed continued involuntary commitment. The State was required to show that, within a reasonable degree of medical probability, R.V. had a mental illness that made him a danger to himself or others. An opinion an illness or condition "possibly" causes a particular result is inadmissible. See Eckert v. Rumsey

A-2929-17T2

Park Associates, 294 N.J. Super. 46, 50-51 (App. Div. 1996); see also Vuocolo v. Diamond Shamrock Chems. Co., 240 N.J. Super 289, 299 (App. Div. 1990) ("Historically, courts have refused to admit expert medical testimony based on mere speculation of possibility . . . ."); Gribbin v. Fox, 130 N.J.L. 357, 359 (Sup. Ct. 1943) aff'd, 131 N.J.L. 187 (E & A 1944) (it was error to not strike the testimony of a medical expert based on mere possibility).

Sethi's failure to testify that, within reasonable medical probability, R.V.'s mental illness made him a danger to himself or others, not to mention Sethi was not qualified as an expert witness, was fatal to the State's case. There was no competent evidence to support the State's premise R.V. required involuntary commitment.

The February 22, 2018 order is reversed. Because of our disposition, we need not address any other contentions R.V. asserts on appeal.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION