# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2928-17T2

IN THE MATTER OF THE
CIVIL COMMITMENT OF S.T.,

_____

Submitted February 14, 2019 – Decided May 2, 2019

Before Judges Simonelli and O'Connor.

On appeal from Superior Court of New Jersey, Law Division, Union County, Docket No. 24218.

Joseph E. Krakora, Public Defender, attorney for appellant S.T. (Alexandria S. Correa, Assistant Deputy Public Defender, of counsel and on the brief).

Robert E. Barry, Union County Counsel, attorney for respondent County of Union (Kevin G. Campbell, Assistant County Counsel, on the briefs).

PER CURIAM

S.T. appeals from a February 22, 2018 order that continued her involuntary commitment to Trinitas Regional Medical Center. Although she is

no longer committed,[1] this matter is not moot because she is liable for the cost of the confinement the court ordered on February 22, 2018.  See N.J.S.A. 30:4-60(c)(1).  If that confinement should not have been ordered, S.T. is entitled to a credit.  See In re Commitment of B.L., 346 N.J. Super. 285, 292 (App. Div. 2002).  After perusing the record and applicable legal principles, we reverse.

On February 18, 2018, pursuant to N.J.S.A. 30:4-27.2(m), the court entered a temporary order for S.T.'s involuntary commitment for inpatient treatment.  A hearing to review her continued eligibility for involuntary commitment was held on February 22, 2018.  At that hearing, M. Awais Sethi, M.D., and S.T.'s mother testified.  We summarize the salient testimony.

S.T. was admitted into the hospital on February 16, 2018, with a history of having given birth to her first child within the month.  Since then, she had been "agitated," and was observed to have thrown vases and cable boxes against the wall.  During her hospital admission, Sethi diagnosed S.T. with psychotic disorder, not otherwise specified.  He noted the Division of Child Protection and Permanency was involved in the baby's care because of her behavior.

---

[1]  The record does not reveal when S.T. was released from involuntary commitment.

A-2928-17T2

Although Sethi testified that he had observed S.T. "acting really bizarre" while in the hospital, which took the form of S.T.'s "laughing for no reason," he also stated that, on the day before the hearing, he thought S.T. "wasn't that sick, [and] I was questioning why she was brought [to the hospital]." Despite the latter statement, he testified he had a concern for both S.T. and her newborn. He commented:

> I believe she's . . . not in her right mind to provide the child with the care that the child needs. She is at risk of losing the child if she continues to behave the way she did. And I've just started her on the anti-psychotic medication that . . . needs to be adjusted before she's stable enough to go home.

Sethi acknowledged S.T. is compliant with taking medication and, while hospitalized, did not exhibit assaultive behavior either toward herself or others, and did not damage any property. Nevertheless, Sethi was "fairly convinced that [S.T. is] psychotic[,]" and he had a concern about her "bizarre behavior." In his opinion, if she were discharged, she "possibly" would be a danger to others and, in particular, her child. Sethi recommended that S.T. continue to be committed, but that the court hold a review hearing in two weeks. S.T.'s mother's testimony was very limited; she merely testified S.T. would "laugh out sometimes."

3

Without making any findings of fact or conclusions of law, see Rule 1:7-4(a), the court ordered that S.T.'s involuntary commitment continue another two weeks and scheduled a review hearing for March 8, 2018. The record does not reveal what occurred at the latter hearing.

On appeal, S.T. asserts a number of contentions. They include, but are not limited to, that Sethi had not been qualified as an expert witness before he testified, and that he did not state it was probable S.T. would be a danger to others if released from involuntary commitment. S.T. argues either one of these omissions requires the reversal of the February 22, 2018 order.

N.J.S.A. 30:4-27.15(a) authorizes a court to continue an individual's involuntary commitment past a temporary commitment order, so long as "the court finds by clear and convincing evidence that the patient needs continued involuntary commitment." The statute defines "in need of involuntary commitment to treatment" as "an adult with mental illness, whose mental illness causes the person to be dangerous to self or dangerous to others or property and who is unwilling to accept appropriate treatment voluntarily after it has been offered." N.J.S.A. 30:4-27.2(m).

"Dangerous to self" is defined as:

> [B]y reason of mental illness the person has threatened or attempted suicide or serious bodily harm, or has

behaved in such a manner as to indicate that the person is unable to satisfy his need for nourishment, essential medical care or shelter, so that it is probable that substantial bodily injury, serious physical harm or death will result within the reasonably foreseeable future; however, no person shall be deemed to be unable to satisfy his need for nourishment, essential medical care or shelter if he is able to satisfy such needs with the supervision and assistance of others who are willing and available. This determination shall take into account a person's history, recent behavior and any recent act, threat or serious psychiatric deterioration.

[N.J.S.A. 30:4-27.2(h).]

We turn to S.T.'s contention that the court's failure to qualify Sethi as an expert witness warrants the reversal of the February 22, 2018 order. N.J.R.E. 702 states that:

[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

This rule requires that a witness who testifies on a subject matter beyond the ken of the fact-finder possess sufficient expertise to offer the intended testimony. State v. Kelly, 97 N.J. 178, 208 (1984). Before such witness may testify, the court must establish the witness has the requisite expertise to testify about such specialized knowledge. See State v. Jenewicz, 193 N.J. 440, 455

(2008). In addition, when seeking a final order for involuntary commitment, the State's application must be supported by the oral testimony of a psychiatrist. R. 4:74-7(e).

As stated, to involuntarily commit a party, the State must prove such party is afflicted with a mental illness that causes the party to be dangerous to himself, others, or property. R. 4:74-7(f). Generally, such proof requires medical expert testimony. Here, S.T. did not stipulate Sethi was qualified to testify as an expert in this matter. Thus, the State was required to introduce evidence of Sethi's qualifications and the court was obligated to make a finding about them. As a result of the State's omission, the court could not make the requisite findings. There was no evidence Sethi was qualified to testify as an expert witness. There is not even any evidence he was a psychiatrist. See R. 4:74-7(e).

In addition, even if Sethi were properly qualified, he merely testified it was "possible" S.T.'s mental illness made her a danger to others. That opinion was insufficient to establish by clear and convincing evidence S.T. needed continued involuntary commitment. To establish her illness made her a danger to others required expert testimony couched in terms of reasonable medical probability. Eckert v. Rumsey Park Associates, 294 N.J. Super. 46, 50-51

(App. Div. 1996). An opinion stating it is "possible" an illness or condition causes a particular result is inadmissible. See ibid.; see also Vuocolo v. Diamond Shamrock Chems. Co., 240 N.J. Super 289, 299 (App. Div. 1990) ("Historically, courts have refused to admit expert medical testimony based on mere speculation of possibility . . . ."); Gribbin v. Fox, 130 N.J.L. 357, 359 (Sup. Ct. 1943) aff'd, 131 N.J.L. 187 (E & A 1944) (it was error to not strike the testimony of a medical expert based on mere possibility).

Here, Sethi's failure to testify it was probable S.T. was a danger to others and the fact he was not qualified to testify as an expert witness compels that we reverse the February 22, 2018 order. There was no competent evidence introduced at the subject hearing that supports the State's contention S.T. was a danger to others. Because of our disposition, we need not address the other contentions S.T. raises on appeal.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

7

A-2928-17T2